# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| *In re* Application for Discovery Pursuant to 28 U.S.C. § 1782 | Case No. 1:25-mi-00043-TWT-RDC |

# APPLICANT WATER STREET CAPITAL, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO VACATE AND QUASH, AND IN SUPPORT OF WATER STREET'S CROSS-MOTION TO COMPEL

# TABLE OF CONTENTS

I.    INTRODUCTION AND RELIEF REQUESTED ........................................... 1

II.   PRELIMINARY STATEMENT........................................................... 1

III.  BACKGROUND ............................................................................ 5

    A.    The Proxy Fight Over Control of REC Silicon ......................................... 5

    B.    Procedural History ........................................................................ 8

IV.   LEGAL STANDARDS....................................................................... 9

V.    ARGUMENT ................................................................................. 10

    A.    This Court Correctly Held that Water Street Satisfied the Statutory Requirements of § 1782, Including that Water Street Seeks Evidence "For Use" in a Foreign Proceeding. ...................................................................... 10

    B.    This Court Correctly Held that the *Intel* Factors Favor Discovery........... 17

        1.    Hanwha Qcells and the Proposed Deponents Will Not Be "Participants" In the Norwegian Litigation................................................................. 17

        2.    The Requested Discovery Has "Utility" in the Norway Litigation....... 20

        3.    The Requested Discovery Does Not Circumvent Any Foreign Proof-Gathering Restriction................................................................... 21

        4.    The Requested Discovery Is Not Overbroad or Unduly Burdensome. . 24

    C.    Hanwha's Request to Quash the Subpoenas Should Be Denied. ............. 30

    D.    Water Street Agrees to the Entry of a Protective Order, But Any "Prosecution Bar" Would Be Inappropriate........................................... 31

    E.    The Court Should Deny Hanwha's Request for Reciprocal Discovery.... 32

    F.    The Court Should Compel Hanwha's Document Production and Depositions. .................................................................................... 35

VI.   CONCLUSION................................................................................ 35

i

# TABLE OF AUTHORITIES

**Cases**

*In re Accent Delight Int'l Ltd.,*
869 F.3d 121 (2d Cir. 2017) ........................................................................17

*In re Application to Conduct Discovery,*
2017 WL 3708028 (D.D.C. Aug. 18, 2017) .................................................29

*Aspen Corps., Inc. v. Gorman,*
2020 WL 10057926 (S.D. Fla. Oct. 8, 2020)................................................31

*In re Blue Cross Blue Shield Antitrust Litigation,*
2017 WL 10410066 (N.D. Ala. Apr. 25, 2017).............................................27

*In re BonSens.org,*
95 F.4th 75 (2d Cir. 2024) ...........................................................................15

*In re Bracha Found.,*
663 F. App'x 755 (11th Cir. 2016) ...................................................15, 18, 23

*Budeanu v. Allstate Ins. Co.,*
2024 WL 4543187 (N.D. Ga. July 12, 2024)...........................................24, 25

*Campero USA Corp. v. ADS Foodservice, LLC,*
916 F. Supp. 2d 1284 (S.D. Fla. 2012)........................................................30

*In re Chevron Corp.,*
2012 WL 3636925 (S.D. Fla. June 12, 2012) ...............................................20

*In re Clerici,*
481 F.3d 1324 (11th Cir. 2007) ...................................................................13

*In re Compania Anonima,*
2015 WL 12862922 (N.D. Ga. May 13, 2015)..............................................23

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,*
747 F.3d 1262 (11th Cir. 2014) .......................................................11, 12, 13

*Consorcio Minero, S.A. v. Renco Grp., Inc.,*
2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012) ...............................................33

*Deposit Ins. Agency v. Leontiev,*
2018 WL 3536083 (S.D.N.Y. July 23, 2018) ................................................33

*In re Escallon,*
323 F. Supp. 3d 552 (S.D.N.Y. 2018)...........................................................22

*Euromepa S.A. v. R. Esmerian, Inc.,*
51 F.3d 1095 (2d Cir. 1995) ........................................................................34

*In re Fagan*,
2019 WL 7290964 (N.D. Ohio Dec. 30, 2019)......................................................22

*Feingold v. Cardinale*,
2023 WL 8476408 (S.D. Fla. Nov. 1, 2023)........................................................31

*Felicia v. Celebrity Cruises, Inc.*,
286 F.R.D. 667 (S.D. Fla. 2012).....................................................................10

*Fortinet, Inc. v. Forescout Techs., Inc.*,
2024 WL 139259 (N.D. Cal. Jan. 11, 2024).......................................................25

*Frasers Grp. PLC v. Gorman*,
2023 WL 6938284 (S.D.N.Y. Oct. 19, 2023).....................................................26

*Frasers Grp. PLC v. Stanley*,
95 F.4th 54 (2d Cir. 2024) ...........................................................................18

*In re Furstenberg Fin. SAS*,
785 F. App'x 882 (2d Cir. 2019) ...................................................................15

*In re Furstenberg Finance SAS*,
2018 WL 735670 (S.D. Fla. Jan. 10, 2018) .......................................................33

*Furstenberg Finance SAS v. Litai Assets LLC*,
877 F.3d 1031 (11th Cir. 2017) .....................................................................12

*Giannerini v. Embry-Riddle Aeronautical Univ., Inc.*,
2024 WL 184252 (M.D. Fla. Jan. 17, 2024).......................................................25

*Glock v. Glock, Inc.*,
797 F.3d 1002 (11th Cir. 2015) .....................................................................17

*Gulf Investment Corp. v. Doe*,
2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020).....................................................13

*In re Guriev*,
2025 WL 1917987 (S.D. Fla. July 11, 2025).......................................................23

*Heraeus Med. GmbH v. Biomet, Inc.*,
2021 WL 4133710 (N.D. Ind. Sept. 10, 2021).....................................................20

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) .................................................................12, 16

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
33 F.4th 669 (2d Cir. 2022) .........................................................................15

*In re Imanagement Servs, Ltd.*,
2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005).....................................................33

*In re Inmobiliaria Tova*,
2021 WL 925517 (S.D. Fla. Mar. 10, 2021)........................................................19

iii

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).................................................................17, 18

*In re Jagodzinski*,
    2019 WL 1112389 (S.D. Fla. Jan. 15, 2019) ..................................23

*Jet Blast, Inc. v. Blue Lake Serv., LLC*,
    348 F.R.D. 706 (N.D. Fla. 2025) ....................................................26

*Jordan v. Comm'r, Mississippi Dep't of Corr.*,
    947 F.3d 1322 (11th Cir. 2020) ......................................................31

*Kay Co., LLC v. EQT Prod. Co.*,
    2018 WL 5118602 (N.D.W. Va. Aug. 27, 2018)..............................26

*Klayman v. Porter*,
    104 F.4th 298 (D.C. Cir. 2024)........................................................32

*In re Klein*,
    2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023) ..................................18

*In re Kreke Immobilien KG*,
    2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013)......................................23

*In re Letter Rogatory from the Nedenes Dist. Ct., Norway*,
    216 F.R.D. 277 (S.D.N.Y. July 14, 2003)........................................22

*Leutheusser-Schnarrenberger v. Kogan*,
    2018 WL 5095133 (N.D. Cal. Oct. 17, 2018)....................................15

*Location 24, LLC v. Drs. Same Day Surgery Ctr., Inc.*,
    2023 WL 6049818 (M.D. Fla. Jan. 27, 2023)....................................28

*Maronda Homes, Inc. v. Progressive Express Ins. Co.*,
    2015 WL 1565299 (M.D. Fla. Apr. 8, 2015)................................24, 26

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997) ..............................................................28

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006)...............................................29

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ..................................33

*In re MTS Bank*,
    2018 WL 3145806 (S.D. Fla. June 27, 2018) ..................................21

*In re Municipality of Mariana*,
    2024 WL 4602818 (S.D. Fla. Oct. 29, 2024)................................25, 26

*Nationstar Mortgage, LLC v. Flamingo Trails No. 7 Landscape
    Maintenance Ass'n*,
    316 F.R.D. 327 (D. Nev. July 28, 2016)............................................27

*In re O'Keefe*,
   660 F. App'x. 871 (11th Cir. 2016) ...................................................................28

*In re Oasis Focus Fund LP*,
   2022 WL 17669119 (S.D. Cal. Dec. 14, 2022)...............................................20

*In re Oasis Focus Fund LP*,
   2023 WL 6278882 (W.D. Tex. Sept. 26, 2023)................................................26

*Optimal Inv. Servs., S.A. v. Berlamont*,
   773 F.3d 456 (2d Cir. 2014) ..........................................................................18

*In re Orthogen Int'l GmbH*,
   2023 WL 6813223 (S.D. Fla. Oct. 16, 2023)..............................................20, 22

*In re Petrus Advisers Investments Funds, L.P.*,
   2023 WL 3673372 (S.D. Fla. May 26, 2023) ...................................................30

*In re Pidwell*,
   2022 WL 192987 (S.D.N.Y. Jan. 21, 2022).....................................................19

*In re Pinewood Techs. Asia Pac. Ltd.*,
   2024 WL 5294277 (S.D. Fla. Nov. 19, 2024)...................................................25

*In re Pola Martime Ltd.*,
   2018 WL 1787181 (S.D. Ga. Apr. 13, 2018)....................................................23

*Pons v. AMKE Registered Agents, LLC*,
   835 Fed. App'x 465 (11th Cir. 2020) ...........................................................9, 12

*In re Pons*,
   2020 WL 5355967 (S.D. Fla. Sept. 7, 2020) ...................................................35

*In re Postalis*,
   2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ..................................................16

*In re Rendon*,
   2020 WL 8771274 (S.D. Fla. Nov. 5, 2020)................................................13, 23

*Republic Health Corp. v. Lifemark Hosps., Inc.*,
   755 F.2d 1453 (11th Cir. 1985) ......................................................................15

*In re Republic of Ecuador*,
   2011 WL 736868 (N.D. Cal. Feb. 22, 2011) ...............................................32, 33

*In re Request for Assistance from Ministry of Legal Affairs of
   Trinidad and Tobago*,
   848 F.2d 1151 (11th Cir. 1988) ......................................................................28

*Ringgold-Lockhart v. County of Los Angeles*,
   761 F.3d 1057 (9th Cir. 2014) ........................................................................32

*Rosen v. Provident Life & Accident Ins. Co.*,
   308 F.R.D 670 (N.D. Ala. 2015) ....................................................................10

*Sams v. GA W. Gate, LLC*,
   316 F.R.D. 693 (N.D. Ga. 2016)........................................................................9

*In re Sauren Fonds-Select SICAV*,
   2016 WL 6304438 (D.N.J. Oct. 26, 2016)..............................................9, 17, 30

*Schnatter v. 247 Group, LLC*,
   343 F.R.D. 325 (W.D. Ky. Dec. 23, 2022).......................................................27

*Sgromo v. JA-RU Inc.*,
   2023 WL 2919865 (M.D. Fla. Feb. 6, 2023) ...................................................32

*In re Sveeas*,
   249 F.R.D. 96 (S.D.N.Y. Apr. 1, 2008)............................................................22

*In re Top Matrix Holdings Ltd.*,
   2020 WL 248716 (S.D.N.Y. Jan. 16, 2020)................................................18, 19

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
   295 F.R.D. 517 (N.D. Fla. 2013) .......................................................................9

*United States v. Sealed 1*,
   235 F.3d 1200 (9th Cir. 2000) .........................................................................12

*Victoria, LLC v. Likhtenfeld*,
   791 F. App'x 810 (11th Cir. 2019) ..................................................................33

*In re Watkins*,
   2024 WL 4264900 (S.D.N.Y. July 26, 2024) ..................................................32

**Statutes**

28 U.S.C. § 1782 ...................................................................................*passim*

Norwegian Dispute Act .................................................................................21

Norwegian Securities Trading Act.................................................................14

**Rules**

Fed. R. Civ. P. 30...........................................................................................27

Fed. R. Civ. P. 37...........................................................................................10

Fed. R. Civ. P. 45...................................................................................9, 30, 31

vi

## I. INTRODUCTION AND RELIEF REQUESTED

Applicant Water Street Capital, Inc. respectfully submits this memorandum of law in opposition to Respondents Hanwha Q Cells USA, Inc., Hanwha Q Cells Georgia, Inc., Bongsoo Kim, Eun Sik Kim, and Hyunkwang Cho's (collectively, "Hanwha") motion to vacate this Court's July 2, 2025 Order authorizing Water Street to serve five discovery subpoenas, and to quash these subpoenas. ECF No. 24 ("MTQ"). Hanwha's motion should be denied. Hanwha should be compelled to comply with the subpoenas, immediately produce three categories of readily available information, and cooperate in an expedited meet-and-confer process.

## II. PRELIMINARY STATEMENT

Water Street sought and obtained this Court's leave to take a modest amount of civil discovery in the Northern District of Georgia in aid of a prospective lawsuit in Norway. This is no "fishing expedition." Water Street's application was based on significant evidence that the Korean conglomerate Hanwha Group is conducting a scheme to seize total ownership over the Norwegian public company REC Silicon for pennies on the dollar through materially misleading statements and omissions. *See* ECF No. 1-1 ("App.") at 13–24 (summarizing evidence); ECF No. 4 ¶¶ 16–24 (summarizing corroborating statements of seven confidential witnesses). On July 2, 2025, the Court granted Water Street's application, having concluded it satisfied the requirements of 28 U.S.C. § 1782 and the governing *Intel* factors. ECF No. 13

-1-

("Order").  The Court "reviewed the proposed subpoenas (for deposition testimony and documents), and [found] that they are reasonably well tailored to Water Street's potential claims and would not be 'unduly intrusive or burdensome.'"  *Id.* at 5.

Hanwha's motion to vacate and quash advances a hodgepodge of excuses and deflections, none supporting reversal of the Court's July 2 decision.

*First*, Hanwha's protestations on the merits that it did not sabotage or harm REC Silicon are disputed and beside the point.  Water Street advanced factually supported, legally viable claims against Hanwha Group's Norwegian entity, Anchor AS ("Anchor"), under Norwegian law.  The merits of Water Street's claims and Hanwha's defenses will be litigated not in Georgia, where Water Street merely seeks discovery, but in Norway, where the truth will out.

*Second*, it does not matter that Water Street has not yet sued Hanwha in Norway.  Section 1782 does not require an already-filed foreign action, and this Court correctly found that Water Street's submissions confirming its intent to sue, the viability of its contemplated claims under Norwegian law, and its successful related § 1782 application in Washington sufficiently established that the evidence sought here is "for use" in Norway.  Nor was there any July 8 deadline to file the Norwegian lawsuit.  This was the date Hanwha's initial "voluntary" tender offer expired.  But there have been intervening developments.  Hanwha's initial tender offer failed to obtain full control of REC Silicon, and thus it must now launch a

2

"mandatory" tender offer in Norway for Water Street's and others' shares. As Water Street's Norwegian law expert confirms, Water Street could attempt to enjoin this follow-on tender offer or claim damages. There is every reason for Water Street to continue pressing this application, and Hanwha's insinuations that Water Street has some other, improper purpose are utterly baseless.

*Third*, Hanwha offers nothing to reverse the Court's conclusion that the governing *Intel* factors weigh in favor of discovery. Discovery is needed in the United States because the key people, entities, and documentary evidence are located here. The requested discovery will not be in the possession, custody, or control of Hanwha's Norwegian entity, and Norwegian tribunals lack the jurisdiction to compel persons outside of Norway to produce evidence in Norwegian civil litigation. Water Street's discovery requests are different from and do not duplicate those it made of REC Silicon in Washington. And the deposition targets—three officers of a subsidiary low in the chain of a behemoth global conglomerate, who likely personally oversaw the transactions at issue—are not "apex" witnesses to be shielded from discovery.

*Fourth*, Hanwha's request to quash the subpoenas as unduly burdensome should be swiftly denied. This Court already found that Water Street's discovery requests are reasonably tailored to its claims. Hanwha makes no effort to quantify the burden of complying with the subpoenas. It declined Water Street's invitation

3

to confer on the substance of the requests. And it chose instead to throw its weight behind voluminous motion practice and impose significant litigation burden on Water Street, a modest Jacksonville-based investment company. In reality, a large global company such as Hanwha, advised by sophisticated counsel, is not overburdened by seven simple requests for production and four depositions.

*Fifth*, Water Street is happy to enter into a standard protective order governing the confidentiality and use of discovery taken in this action. But there is no legal basis for Hanwha's further request of a "prosecution bar" restricting Water Street from future litigation: an extremely disfavored remedy that requires compelling evidence of abuse or bad faith. Nor is there any support for Hanwha's request for "reciprocal discovery," an end-run around the requirements of § 1782 that makes no practical sense here and would further bog down this action.

To cut through Hanwha's delay tactics, Water Street respectfully cross-moves for an order compelling Hanwha to comply with the subpoenas. The Court should order the immediate production of three narrow categories of responsive information Hanwha surely has on hand: (a) the terms of its agreement to purchase polysilicon from OCI, and all Hanwha employees who (b) were physically present at REC Silicon's Moses Lake facility or (c) communicated with REC Silicon's Moses Lake facility during the at-issue period. The parties should then be ordered to immediately meet and confer to address the balance of Water Street's discovery requests.

### III.   BACKGROUND

The relevant factual background is set forth in Water Street's application for discovery and the accompanying declarations and exhibits.  ECF Nos. 1–4.  In sum, Water Street has developed strong evidence that the Korean conglomerate Hanwha Group is attempting to seize total and complete ownership of REC Silicon, a company traded on the Oslo Stock Exchange, through materially misleading statements.  App. at 17–24; Declaration of David P. Salant ("Salant Decl.") ¶¶ 3–10.  Specifically, Hanwha failed to disclose that it used its controlling position in REC Silicon to cause the termination of REC Silicon's sole purchase agreement and cause REC Silicon's stock price to collapse, to acquire the company for cheap.  App. at 17–20.  Water Street respectfully recites the following additional facts in opposition to Hanwha's proffered facts and to explain subsequent developments.

### A.   The Proxy Fight Over Control of REC Silicon

Water Street's application was filed against the backdrop of a proxy fight in Norway over the control of REC Silicon.  On June 24, 2025, Hanwha informed REC Silicon that it "will not provide any further loans to REC Silicon if there are any changes to the composition of the board of the Company that is not supported by Hanwha and the Offer is not completed."  Salant Decl., Ex. 2.  Hanwha further stated that it would not extend its offer beyond July 8 nor increase its offer price of NOK 2.20 per share.  *Id.*  At an Annual General Meeting held the next day, a slate of

candidates supported by Water Street and other minority shareholders were elected to the Board of Directors of REC Silicon.  ECF No. 2-16.

On June 26, REC Silicon issued a press release stating that "[i]n light of the Company's financial situation and its communicated reliance on support from Hanwha," the Company, controlled by the Hanwha-supported Board, recommended that the offer be concluded "as soon as possible."  Salant Decl., Ex. 2.

On July 7, 2025, REC Silicon's newly constituted Board issued a press release appraising the situation.  The new Board stated that Hanwha's tender offer "does not reflect the underlying value of the Company given the unlocked potential value of its assets and the future prospects for the alternative energy industry."  ECF No. 24-43.  The Board had "approached representatives of Hanwha with the aim of having Hanwha increase the Offer Price to fully reflect the Company's underlying value, but without any success."  *Id.*  The Board explained that the previous, Hanwha-supported Board had entered into a "Transaction Agreement" that "restricts the Board's ability to pursue alternative financing and strategic options in the current situation"—in other words, the Board could deal with no one but Hanwha—and that "Hanwha has not taken any steps to release the Board from these restrictions, but instead approached the Board and reserved the right to initiate legal action against each individual board member for failure to comply with its alleged duties." *Id.*

6

Laboring under Hanwha's threats of personal liability, and in light of "the Company's critical financial situation with no realistic and available financing alternatives to the continued financing from Hanwha, limited time available, and legal constraints on the Board[]," the new Board declared that it was "unable to recommend any alternatives" to Hanwha's tender offer. *Id.* at 2. The new Board glaringly did not affirmatively support Hanwha's offer.

On July 8, 2025, the voluntary tender offer expired. Between its existing stake and tendered shares, Hanwha had obtained approximately 43.94% of share capital and voting rights of REC Silicon but failed to secure the necessary threshold to gain full control of the company. Salant Decl., Ex. 3. This outcome required Anchor to make a mandatory offer under Norwegian law to acquire all shares not already owned. 2d Kinander Decl. ¶ 23; ECF No. 2-15 at 24.

On July 16, 2025, Water Street and others agreed to support the election of a new Board supported by Hanwha. ECF No. 24-31. Water Street made this decision in light of what it perceived to be Hanwha's threats to throw REC Silicon into bankruptcy, and to seek the personal liability of the Water Street-supported director candidates in Norway, if Hanwha did not get its way. 2d Leming Decl. ¶ 12. Water Street did so "provided that a binding agreement is entered into pertaining to Hanwha's potential financing," in other words, on the condition that Hanwha would continue funding REC Silicon and not permit it to go bankrupt. *Id.* Two days later,

7

REC Silicon announced that it had entered into a USD 6.5 million short-term loan agreement with a Hanwha subsidiary.  ECF No. 24-32.

On July 31, 2025, Anchor launched its mandatory tender offer, which is now scheduled to expire on August 29, 2025.  Salant Decl., Ex. 4 at 10.  During an Extraordinary General Meeting held on August 7, 2025, a Hanwha-supported slate of candidates were elected to REC Silicon's Board.  Salant Decl., Ex. 5.  Shortly thereafter, on August 11, 2025, REC Silicon announced that it had entered into another short-term USD 6.5 million loan agreement with Hanwha's subsidiary "to fund the company's urgent operational capital needs."  Salant Decl., Ex. 6.  REC Silicon reiterated that it "does not have sufficient available cash to meet debt service and other anticipated operating cash flow requirements for this year without the continued support of the major shareholder, Hanwha, or additional sources of capital."  *Id.*

## B.    Procedural History

On June 30, 2025, Water Street filed its application in this Court seeking documents and deposition testimony.  ECF No. 1.  On July 2, the Court granted the application, finding Water Street "made a *prima facie* showing warranting the Court's intervention" and that the subpoenas were "reasonably well tailored" and "would not be 'unduly intrusive or burdensome.'"  Order at 3, 5.  On July 3, Water Street served Hanwha Qcells USA with a subpoena.  ECF No. 15 at 1.

8

On July 8, 2025, the parties met and conferred. Hanwha declined to engage in any substantive discussion about satisfying Water Street's document requests or scheduling depositions. Instead, Hanwha accepted service of the subpoenas in exchange for a lengthy extension of its deadline to respond. Salant Decl. ¶ 7; ECF No. 16 at 1. On July 31, Hanwha filed the instant motion to vacate and to quash.

## IV.   LEGAL STANDARDS

To decide this motion to vacate, the Court must first "determin[e] whether it ha[d] the authority to grant" Water Street's § 1782 application. *Pons v. AMKE Registered Agents, LLC*, 835 Fed. App'x 465, 467 (11th Cir. 2020). If the Court reaffirms that Water Street met the statutory factors, it next considers whether it exercised its discretion appropriately in granting the application. *Id.* at 468; *see In re Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *3 (D.N.J. Oct. 26, 2016).

A district court quashes or modifies a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "[T]he factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 697 (N.D. Ga. 2016). "The moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 527

(N.D. Fla. 2013) (internal quotations omitted).

Rule 37(a) permits parties to move for an order compelling discovery.  *See Felicia v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 670 (S.D. Fla. 2012).  "The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted ... [with] [t]he onus [] on the party resisting discovery to demonstrate specifically how the objected-to information is unnecessary, unreasonable or otherwise unduly burdensome." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D 670, 678 (N.D. Ala. 2015) (quotation marks omitted).

## V.    ARGUMENT

This Court already found that Water Steet satisfied the statutory requirements of 28 U.S.C. § 1782 and that each of the discretionary *Intel* factors favors granting discovery.  Order at 3–4.  Hanwha now asks the Court to reconsider that decision by presenting its merits defenses and levying unsupported accusations about Water Street's motives.  This Court should deny Hanwha's motion in full and grant Water Street's cross-motion to compel.

**A.    This Court Correctly Held that Water Street Satisfied the Statutory Requirements of § 1782, Including that Water Street Seeks Evidence "For Use" in a Foreign Proceeding.**

As this Court held, Water Street meets the statutory requirements for discovery under 28 U.S.C. § 1782.  *Id.*  Hanwha concedes that three of the four elements are satisfied, *see* MTQ at 20, but challenges this Court's conclusion that

the Norwegian Action is "within reasonable contemplation," Order at 3. Hanwha provides no compelling reason to overturn the Court's determination.

As detailed in the application, Water Street seeks discovery for contemplated civil litigation in Norway against Hanwha Global's Norwegian subsidiary and certain former REC Silicon directors. Water Street submitted declarations from a Water Street employee stating that "Water Street intends to commence civil proceedings in Norwegian Court," ECF No. 2 ¶ 51, a Norwegian expert confirming that Water Street "has plausible causes of action" under Norwegian law, ECF No. 3 ¶ 3, and from counsel explaining that Water Street has already obtained a related § 1782 discovery order in Washington based on the same contemplated lawsuit, ECF No. 4 ¶ 2. This Court found these submissions adequately showed "that the Norwegian lawsuit is forthcoming." Order at 4; *see also Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1266 (11th Cir. 2014).

Hanwha's attempt to reframe the record fails to meaningfully rebut Water Street's clear showing that it meets the requirements of § 1782.

*First*, it is not true that "any filing in Norway is contingent on whatever [Water Street] learns via discovery here." MTQ at 21. Hanwha admits that Water Street is "in the process of contemplating and preparing to commence civil proceedings" and "intends to commence Norwegian legal proceedings ... once it obtains the documents

11

and testimony it seeks." *Id.* (citing App. at 18, 28). Federal courts routinely grant § 1782 applications where, as here, the applicant intends to initiate foreign proceedings but seeks additional evidence beforehand. *In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018). The Eleventh Circuit affirmed a similar § 1782 application in *Consorcio Ecuatoriano*, 747 F.3d at 1266, where the applicant uncovered evidence through an investigation and sought discovery to support anticipated litigation in Ecuador. So too here: Water Street has developed evidence of Hanwha's misstatements and omissions in connection with its tender offer and is entitled to discover additional corroborating evidence located in this District.

*Second*, invoking a nonexistent requirement, Hanwha complains that Water Street "does not expressly provide a timeframe as to when it may expect to commence its contemplated litigation in Norway." MTQ at 21. But Hanwha cites *no* case that requires an applicant to state the date the applicant intends to file a contemplated suit. Nor can it. A rigid deadline for § 1782 relief would undermine the statute by encouraging gamesmanship—allowing discovery targets like Hanwha to run out the clock. A foreign proceeding need not be "imminent" for a court to grant discovery; it need only be "within reasonable contemplation." *Pons*, 835 F. App'x. at 470; *United States v. Sealed 1*, 235 F.3d 1200, 1204 (9th Cir. 2000).

Water Street has produced "reliable indications" that "proceedings [would] be instituted within a reasonable time." *Furstenberg Finance SAS v. Litai Assets LLC*,

12

877 F.3d 1031, 1035 (11th Cir. 2017).  The facts precipitating Water Street's contemplated litigation—Anchor's voluntary and misleading tender offer—occurred on May 23, 2025.  ECF No. 2-15 at 2.  Since then, Water Street has taken concrete steps in preparation for litigation, including gathering and martialing documentary evidence, conducting witness interviews, identifying specific claims against Anchor and certain REC Silicon board members, and retaining an expert to outline how Hanwha's conduct supports claims under Norwegian law, confirming that its intent to file suit is more than speculative.  To deny discovery here would undermine § 1782's core purpose: facilitating access to relevant evidence in the United States that would otherwise be unavailable to foreign litigants preparing legitimate claims.[1]  *See In re Clerici*, 481 F.3d 1324, 1330 (11th Cir. 2007).

*Third*, Hanwha argues that Water Street has not demonstrated an intent to initiate foreign proceedings because the July 8 voluntary tender offer deadline has passed.  MTQ at 22.  But Norwegian law provides remedies including rescission for

---

[1] The cases Hanwha relies upon are easily distinguishable.  In *In re Rendon*, 2020 WL 8771274, at *11 (S.D. Fla. Nov. 5, 2020), an applicant that had been represented by counsel for seven years, inexcusably failed to detail the potential defendants of its foreign lawsuit, how the cited laws applied to its theory, or any supporting evidence.  And in *Gulf Investment Corp. v. Doe*, 2020 WL 7043502, at *4 (S.D.N.Y. Nov. 30, 2020), the applicant failed to identify the form of contemplated litigation, claims, or legal theories.  This case is far more analogous to *Consorcio Ecuatoriano*, 747 F.3d at 1270, where the applicant identified the anticipated parties to a foreign litigation, relied on findings from an investigation, and submitted a declaration of intent to initiate proceedings—just as Water Street has done here.

fraud and monetary damages from the voluntary tender offer. And Anchor remains obligated under Norwegian law to make a follow-on, "mandatory" offer for Water Street's REC Silicon shares. 2d Kinander Decl. ¶ 23. Water Street thus has adequate time, and multiple theories of liability, that it may bring in Norway.[2]

*Fourth*, Hanwha offers the declaration of its Norwegian law expert—an attorney from the Norwegian law firm that represents Anchor in its tender offers—to argue that Water Street lacks a cognizable claim under Norwegian law because it did not sell its REC Silicon shares, and any judgment would have no legal effect. MTQ at 23. But as Professor Kinander—a preeminent expert in Norwegian securities law who does not have a preexisting interest this matter—explains, Water Street, as a REC Silicon shareholder, may assert a cause of action in Norwegian courts under Chapter 6 of the Norwegian Securities Trading Act for a tender offer that contained material errors or omissions. ECF No. 3 ¶ 9. Water Street suffered economic harm from the lost value of its REC Silicon shares, and may pursue injunctive relief, statutory remedies, disgorgement, and rescission in Norwegian courts. 2d Kinander Decl. ¶¶ 13–19. At best for Hanwha, its "contentions invite the Court to delve into a 'battle-by-affidavit of international legal experts' that turns on

---

[2] Hanwha relies on statements from its Norwegian expert to argue that Water Street could not have obtained an injunction, MTQ at 22 n.7; ECF No. 24-34 ¶¶ 73–77, but that is disputed by the well-reasoned analysis of Water Street's unconflicted Norwegian law expert, Professor Kinander, ECF No. 3 ¶ 47.

a prediction of 'the procedural or substantive law of the foreign jurisdiction,' which is beyond the scope of a Section 1782 inquiry." *In re Furstenberg Fin. SAS*, 785 F. App'x 882, 885 (2d Cir. 2019).

Hanwha cites a shareholder letter in which Water Street notes that REC Silicon may have claims against Hanwha and argues that this amounts to a concession that Water Street lacks standing to pursue Norwegian claims. MTQ at 24. But the fact that REC Silicon may also have claims against Hanwha does not preclude Water Street from asserting its own. It is well established that "the same operative facts" may give rise to distinct claims by different parties against a common defendant.[3] *Republic Health Corp. v. Lifemark Hosps., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). Water Street is not merely passing § 1782 discovery to a third party. Water Street has "articulated a theory on which it intend[s] to

---

[3] The bevy of out-of-Circuit cases cited by Hanwha is largely inapposite, MTQ at 24, as those applicants faced jurisdictional dismissals that made further proceedings uncertain, *see In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024); procedural obstacles requiring leave in the foreign jurisdiction, *see IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022); and speculation that foreign authorities would "welcome" discovery, *see Leutheusser-Schnarrenberger v. Kogan*, 2018 WL 5095133, at *1, *3–4 (N.D. Cal. Oct. 17, 2018) (denying *ex parte* application). Tellingly, *Certain Funds*, 798 F.3d 113 (2d Cir. 2015)—relied upon by Hanwha—supports Water Street's position. There, the court concluded that applicants who were not parties to pending foreign proceedings would satisfy the "for use" requirement if they were parties to contemplated ones and the discovery sought was used to support their claims. *Id.* at 120–21; *see also In re Bracha Found.*, 663 F. App'x 755, 763–64 (11th Cir. 2016) (affirming foreign proceedings were "within reasonable contemplation" even though the applicant first had to satisfy an outstanding judgment before initiating suit).

litigate" against Anchor and certain REC Silicon board members in its own right. *Hornbeam Corp.*, 722 F. App'x at 10.

*Fifth*, Hanwha's characterization of Water Street's application as a "fishing expedition" for the improper purpose of supporting a potential U.S. action is utterly baseless. MTQ at 25. There is no evidence to support Hanwha's insinuation of bad faith. Hanwha offers only a single, innocuous publication in which Water Street states that it believes Hanwha's retraction of a pledge to fund REC Silicon constitutes a breach of contract under U.S. law. *Id.* That statement has nothing to do with the tender offers at issue and does not reference this application.[4] 2d Leming Decl. ¶ 9; ECF No. 24-30.

In any event, the possibility that Hanwha's conduct may violate both Norwegian and U.S. law does not undermine the validity of Water Street's § 1782 application. There is "nothing in the language of § 1782 that purports to limit later uses of evidence that have been properly obtained under § 1782," and such a restriction "lacks a basis in the statutory language and has significant potential to

---

[4] This case is wholly unlike *In re Postalis*, 2018 WL 6725406, at *4–6 (S.D.N.Y. Dec. 20, 2018), where the court denied an application because the subpoena requests were "not limited to any specific issues in the Brazilian litigations," and the applicant publicly admitted in multiple documents that the purpose of the application was to obtain evidence for U.S. action. Water Street's subpoena requests are narrowly directed at contemplated proceedings in Norway.

adversely affect the goals and efficiency of United States litigation."[5]  *Glock v. Glock, Inc.*, 797 F.3d 1002, 1006, 1009 (11th Cir. 2015); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (similar).

In sum, Water Street has provided a more than adequate basis that the discovery it seeks in this application is "for use" in its prospective Norwegian proceeding.  The statutory requirements of § 1782 were met by Water Street in obtaining the Order.  *See Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *3.

**B.      This Court Correctly Held that the *Intel* Factors Favor Discovery.**

This Court already once found that Water Street satisfied the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Each of the *Intel* factors continues to weigh strongly in Water Street's favor.

**1.      Hanwha Qcells and the Proposed Deponents Will Not Be "Participants" In the Norwegian Litigation.**

As this Court found, this factor weighs in favor of awarding discovery because the Hanwha Respondents "will not be direct participants in the contemplated Norwegian lawsuit," Order at 4, and "may be outside the foreign tribunal's

---

[5] Thus, in *In re Associacão dos Profissionais dos Correios*, 2024 WL 4299019, at *5–6 (S.D.N.Y. Sept. 25, 2024)—again, a case Hanwha cites—the court found that the statutory prerequisites for § 1782 were satisfied because the fact that certain materials may "no doubt" be "for use" in a U.S. proceeding did not preclude their simultaneous use in a Brazilian action.  The facts here are far stronger than in *In re Associacao dos Profissionais*, as there is no evidence that Water Street seeks discovery for use in U.S. litigation, and Water Street is willing to negotiate an appropriate protective order to address any such concerns.  *See infra* Section V.D.

17

jurisdictional reach," *Intel*, 542 U.S. at 264.  Hanwha claims Water Street can obtain

"*most*"[6] of its sought discovery through the contemplated Norwegian action and a

court-mandated investigation, MTQ at 27, but its arguments fall short.

*First*, Hanwha argues that the evidence requested in the subpoenas will be

available through Anchor and former REC Silicon's directors.  MTQ at 27–28.  But

"the Court is not asked to consider whether the requested evidence is located

extraterritorially, but whether the person from whom discovery is sought is a

participant in the foreign proceeding."  *In re Top Matrix Holdings Ltd.*, 2020 WL

248716, at *5 (S.D.N.Y. Jan. 16, 2020).  Neither Hanwha Qcells nor its officers are

parties to the contemplated Norwegian proceeding.  That an applicant "might also

be able to seek some records directly from [a defendant] in the contemplated ...

proceeding" does not weigh against granting the application where a foreign "court

would still have no jurisdiction to compel the production of evidence from ... a non-

party" located in this District.  *Bracha Found.*, 663 F. App'x at 764; *Optimal Inv.

Servs., S.A. v. Berlamont*, 773 F.3d 456, 461–62 (2d Cir. 2014).  This is not a case

where "for all intents and purposes," the applicant seeks discovery from its adversary

in a pending foreign proceeding.  *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 59 (2d

Cir. 2024); *In re Klein*, 2023 WL 8827847, at *10 (S.D.N.Y. Dec. 21, 2023).

---

[6] Hanwha concedes that not every document will be available through the Norwegian
court.  MTQ at 27.

*Second*, Hanwha falsely presumes that evidence obtained from the foreign defendants would duplicate evidence from Hanwha Qcells and its officers.  MTQ at 30.  But discovery is necessary because the relevant companies, contracts, and events at issue are based here in Georgia, and it is unlikely that a Norwegian entity created for the purpose of conducting a Norwegian tender offer would possess the information.[7]  *See Top Matrix Holdings*, 2020 WL 248716 at *5.  In all events, "the fact that a U.S. affiliate may have some of the same documents as its foreign affiliate in the foreign litigation does not weigh against granting the requested discovery." *In re Pidwell*, 2022 WL 192987, at *5 (S.D.N.Y. Jan. 21, 2022).

*Third*, Hanwha relies on Mr. Snellingen's assertion to argue that Water Street can obtain pretrial and third-party discovery from Hanwha Qcells and its officers under Norwegian law.  MTQ at 27.  But as Professor Kinander explained, a Norwegian investigation would be inadequate because Norwegian courts lack the authority to compel testimony or document production from U.S. residents.  2d Kinander Decl. ¶¶ 26–30.  Any investigation that "REC Silicon would be required to comply with" would be limited to materials held by REC Silicon's Norwegian

---

[7] Unlike *In re Inmobiliaria Tova*, 2021 WL 925517, at *1 (S.D. Fla. Mar. 10, 2021), where the applicant sought discovery from a U.S. parent company for use in foreign proceedings against its subsidiary, while simultaneously exploring claims such that the parent could become a participant in the contemplated litigation, there is no indication that Hanwha Qcells or its officers will be a party to the contemplated Norwegian proceedings.

affiliate.  MTQ at 27.  There is no legal mechanism to compel Hanwha's Georgia subsidiaries and REC Silicon's Washington-based operations to cooperate or produce documents in response to a Norwegian investigation.[8]

## 2.    The Requested Discovery Has "Utility" in the Norway Litigation.

"Because [Norway] has availed itself of [§ 1782's] discovery tool, it can hardly be said that its own courts would be unreceptive to such discovery." *In re Chevron Corp.*, 2012 WL 3636925, at *11 (S.D. Fla. June 12, 2012).  Hanwha does not dispute this.  Instead, Hanwha argues that the contemplated Norwegian proceeding is not based on a legally recognized claim and that Water Street's application is a pretext to obtain discovery for U.S. litigation.  MTQ at 23.  But Professor Kinander confirms that Water Street has viable claims in Norway.  Kinander Decl. ¶ 9; *supra* Section II.  And the only evidence Hanwha cites is a single letter referencing a potential U.S. *contract* claim—an unrelated statement that has nothing to do with the tender offers at issue, does not reference this application, and does not suggest any intent to use the discovery in U.S. litigation.  *See supra* Section V.A.  Courts in this Circuit have routinely held that the second *Intel* factor weighs

---

[8] Unlike *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *6 (S.D. Cal. Dec. 14, 2022) and *Heraeus Med. GmbH v. Biomet, Inc.*, 2021 WL 4133710, at *4–6 (N.D. Ind. Sept. 10, 2021), Water Street's Norwegian law expert makes clear that the discovery sought is in all likelihood unavailable in the foreign proceeding.  *See In re Orthogen Int'l GmbH*, 2023 WL 6813223, at *10 (S.D. Fla. Oct. 16, 2023) (crediting applicant's expert where the parties provided competing declarations concerning German discovery, and weighing the first *Intel* factor in favor of applicant).

in favor of granting discovery, absent "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re MTS Bank*, 2018 WL 3145806, at *6 (S.D. Fla. June 27, 2018).  Hanwha offers no such proof.

### 3.      The Requested Discovery Does Not Circumvent Any Foreign Proof-Gathering Restriction.

As this Court found, the third *Intel* factor similarly weighs in favor of granting discovery because "there is no sign that Water Street is attempting to circumvent foreign proof-gathering policies."  Order at 4.  The record is clear that "'Norway does not have United States-style pre-trial discovery,' and … 'Water Street would be unable to obtain equivalent evidence through Norwegian civil discovery procedures.'"  Order at 4 (quoting ECF No. 3 ¶¶ 50, 60, 83); *see also supra* Section II.  Hanwha fails to meaningfully refute these facts.

*First*, Hanwha contends that the Norwegian Dispute Act prohibits the requested depositions because the parties to the contemplated proceeding have not agreed to the use of written witness statements.  MTQ at 30.  But Hanwha's own expert acknowledges that Section 21-12 of the Act allows for written witness statements when "examination of the witness is impossible" and doing so "is not contrary to the legislative objectives."  ECF No. 24-34 ¶ 56.  This is precisely the case here.  As Professor Kinander explains, "Norwegian courts regularly accept that foreign witnesses create impossibility within the meaning of Section 21-12," because they "cannot be compelled to appear."  2d Kinander Decl. ¶¶ 8–9; *see also*

21

*Nichiei*, 2023 WL 7001666, at *4.

Norwegian courts actively seek and accept deposition testimony. In *In re Letter Rogatory from the Nedenes Dist. Ct., Norway*, 216 F.R.D. 277, 280 (S.D.N.Y. July 14, 2003), for example, the court granted a Norwegian court's request to take the deposition of a U.S. resident in connection with a Norwegian proceeding. Thus, the Washington court granted Water Street's request to depose REC Silicon officers in connection with its contemplated Norwegian action. ECF Nos. 4-11, 4-12; *see In re Sveeas*, 249 F.R.D. 96, 107 (S.D.N.Y. Apr. 1, 2008) (ordering respondent's deposition in aid of actions pending in Norway and France). Hanwha's proposed limitation—suggesting depositions are only permitted in impossible cases where a witness is deceased or cannot be located,[9] *see* ECF No. 24-34 ¶ 56—"would nullify express statutory text and is inconsistent with Norwegian courts' practical approach to the use of foreign evidence,"[10] 2d Kinander Decl. ¶ 4; *see In re Orthogen Int'l*

---

[9] Hanwha relies on cases that did not involve Norwegian proceedings and do not rebut the fact that Norwegian courts accept deposition testimony. *See In re Escallon*, 323 F. Supp. 3d 552, 560 (S.D.N.Y. 2018) (denying second deposition where uncontested that Colombian law expressly barred reexamination); *In re Fagan*, 2019 WL 7290964, at *3 (N.D. Ohio Dec. 30, 2019) (denying discovery where applicant sought § 1782 discovery for South African criminal matter instead of via official law enforcement channels).

[10] Hanwha asserts that authorizing depositions would run counter to the international comity aims of § 1782. MTQ at 31 n.9. Just the opposite. As the Supreme Court acknowledged in *ZF Automotive US, Inc. v. Luxshare, Ltd.*, which Hanwha relies on, while aiding private adjudicative bodies would not serve comity, "[p]ermitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance"—the

*GmbH*, 2023 WL 6813223, at *10 (weighing third *Intel* factor in favor of discovery despite competing declarations on German law).

*Second*, Hanwha objects that Water Street is prematurely seeking discovery that falls within the jurisdictional reach of Norwegian courts. MTQ at 29–31. Again, Water Street seeks discovery from U.S.-based nonparties to the contemplated proceeding, and such evidence is unavailable through Norwegian courts. *See supra* Section V.A. Moreover, "even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery." *Bracha Found.*, 663 F. App'x at 765; *see also In re Pola Martime Ltd.*, 2018 WL 1787181, at *3 (S.D. Ga. Apr. 13, 2018) (rejecting circumvention argument); *In re Compania Anonima*, 2015 WL 12862922, at *4 (N.D. Ga. May 13, 2015) (similar). Water Street is not required to pursue futile efforts abroad before seeking relief under § 1782.[11]

---

"animating purpose of § 1782." 596 U.S. 619, 621 (2022); *In re Guriev*, 2025 WL 1917987, at *6 (S.D. Fla. July 11, 2025) (rejecting comity argument); *Bracha Found.*, 663 F. App'x at 765 (weighing third *Intel* factor in favor of applicant). Unlike *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013), where the court denied discovery because all parties were in Germany and there was "no suggestion that any documents sought [we]re outside the jurisdictional reach of the German courts," *id.*, this application involves Hanwha's operations and documents located in this District—outside the reach of Norwegian courts.

[11] The cases Hanwha cites do not support its position. In *In re Rendon*, 2020 WL 8771274, at *15, the applicant failed to explain why the documents were necessary or unobtainable through Colombian courts, and in *In re Jagodzinski*, 2019 WL

### 4. The Requested Discovery Is Not Overbroad or Unduly Burdensome.

This Court "reviewed the proposed subpoenas (for deposition testimony and documents), and f[ound] that they are reasonably well tailored to Water Street's potential claims and would not be 'unduly intrusive or burdensome.'" Order at 5. Hanwha now asks the Court to reverse that conclusion without offering any valid basis to disturb it.

*First*, Hanwha argues that the deposition subpoenas directed to the Individual Respondents are unduly burdensome under the "apex doctrine." MTQ at 33. But this doctrine does not apply because the Individual Respondents have not met their burden to prove that they are "sufficiently highranking to merit protection from giving a deposition." *Budeanu v. Allstate Ins. Co.*, 2024 WL 4543187, at *1 (N.D. Ga. July 12, 2024); *see also Maronda Homes, Inc. v. Progressive Express Ins. Co.*, 2015 WL 1565299, at *3 (M.D. Fla. Apr. 8, 2015) (deposition of controller and vice president). The Individual Respondents are management and senior officers of Hanwha Qcells, two small subsidiaries within one of Hanwha Global's 776 global

---

1112389, at *7 (S.D. Fla. Jan. 15, 2019), the court denied an *ex parte* application where the applicant had litigated in France on related matters involving the respondent entities, failed to seek the requested discovery in those proceedings, and already obtained documents through French procedures. By contrast, Water Street has shown that the requested discovery is necessary to support its Norwegian claims, will strengthen its pleadings, and is unobtainable through Norwegian courts.

24

networks;[12] Qcells USA and Qcells Georgia are two of twenty subsidiaries in Hanwha's Qcells Division alone;[13] none of the Individual Respondents are on the board of directors for the parent corporation, Hanwha Solutions;[14] and Hanwha provides "no information about where [they] fit into the hierarchy of the organization." *Budeanu*, 2024 WL 4543187, at *2 (rejecting argument that individuals were apex witnesses for company with over 50,000 employees where neither was among leadership or board of directors). Not "everybody with a C-suite title is automatically an apex witness simply by virtue of the title, regardless of how large or small the company is or what that person's specific responsibilities are." *Fortinet, Inc. v. Forescout Techs., Inc.*, 2024 WL 139259, at *4 (N.D. Cal. Jan. 11, 2024); *see also Giannerini v. Embry-Riddle Aeronautical Univ., Inc.*, 2024 WL 184252, at *1 (M.D. Fla. Jan. 17, 2024).

Hanwha fails to explain how the Individual Respondents are "vulnerable to numerous, repetitive, harassing, and abusive depositions." *In re Municipality of Mariana*, 2024 WL 4602818, at *2 (S.D. Fla. Oct. 29, 2024). Water Street does not seek to depose the Hanwha Qcell's parent corporation, *cf. In re Pinewood Techs.*

---

[12] *Hanwha Group Overview*, Hanwha Vision, https://profile.hanwhavision.com/en/About.html (Feb. 2025).

[13] *Our Locations*, Qcells, https://us.qcells.com/our-locations/ (last visited Aug. 14, 2025).

[14] *Board of Directors*, Hanwha Solutions, https://www.hanwhasolutions.com/en/company/investors/corporate-structure-tab2 (last visited Aug. 14, 2025).

25

*Asia Pac. Ltd.*, 2024 WL 5294277, at *2 (S.D. Fla. Nov. 19, 2024), or anyone that "is a central figure within the [Group's] corporate structure," *In re Oasis Focus Fund LP*, 2023 WL 6278882, at *5, *8 (W.D. Tex. Sept. 26, 2023) (leaving open the possibility of deposing president and CEO at a later date).  To minimize any burden, Water Street is willing to conduct the requested depositions in Georgia—where Hanwha Qcells' facility is located and the relevant events occurred.  *See Kay Co., LLC v. EQT Prod. Co.*, 2018 WL 5118602, at *3 (N.D.W. Va. Aug. 27, 2018).

On the other hand, Hanwha does not dispute that the Individual Respondents have "unique or superior knowledge" regarding the Purchase Agreement and its termination, the replacement contract with OCI, and polysilicon quality testing at the Moses Lake facility.  *See* App. at 46 (detailing Hanwha's actions to sabotage Moses Lake facility); ECF No. 2 (same); *see also Municipality of Mariana*, 2024 WL 4602818, at *4 (denying apex doctrine applicability).  The requested depositions are necessary to elicit context, clarify the meaning of communications, and probe the Individual Respondents' knowledge—critical issues that cannot be discerned from any other means.[15]  *See also Maronda Homes*, 2015 WL 1565299, at *3.

---

[15] Unlike *Jet Blast, Inc. v. Blue Lake Serv., LLC*, 348 F.R.D. 706, 710 (N.D. Fla. 2025), none of the Individual Respondents have submitted declarations disavowing personal knowledge about the issues in this case.  Nor has Water Street been provided "extensive document discovery" without evidence of the Individual Respondents' involvement in underlying issues. *Frasers Grp. PLC v. Gorman*, 2023 WL 6938284, at *3 (S.D.N.Y. Oct. 19, 2023).

That Water Street also seeks to depose Hanwha Qcells USA's and Hanwha Qcells Georgia's corporate representative pursuant to Rule 30(b)(6)[16] does not change the calculus. The Individual Respondents will testify based on their "personal knowledge," while Hanwha Qcells' corporate representatives will provide testimony for the company on a narrow set of designated topics. *In re Blue Cross Blue Shield Antitrust Litigation*, 2017 WL 10410066, at *3–4 (N.D. Ala. Apr. 25, 2017) (ordering depositions of corporate CEOs and 30(b)(6) representative); *see also Schnatter v. 247 Group, LLC*, 343 F.R.D. 325, 333–34 (W.D. Ky. Dec. 23, 2022). Courts have rejected the "argument that a Rule 30(b)(6) deposition and a percipient witness deposition are unnecessary or cumulative of one another based simply on the similarity of topics covered." *Nationstar Mortgage, LLC v. Flamingo Trails No. 7 Landscape Maintenance Ass'n*, 316 F.R.D. 327, 333 (D. Nev. July 28, 2016).

*Second*, Hanwha argues that Water Street's requests—seeking documents related to the Purchase Agreement and polysilicon produced at the Moses Lake Facility—are overly broad. MTQ at 25. But the requests are narrowly tailored in both scope and time, focusing on core issues in the contemplated Norwegian proceeding and limited to a six-month period surrounding the suspicious testing of REC Silicon's polysilicon and Hanwha Qcells' cancellation of the Purchase

---

[16] Water Street seeks a single 30(b)(6) deposition of Hanwha Qcells' corporate representative, and served both Qcells Georgia and Qcells USA with the same deposition notice and topics in an abundance of caution. ECF Nos. 4-1, 4-2.

27

Agreement.[17]  *See In re O'Keefe*, 660 F. App'x. 871, 873–74 (11th Cir. 2016).

*Third*, Hanwha argues that Water Street's subpoenas are duplicative and unduly burdensome because the requested discovery could allegedly be obtained from Anchor and former REC Silicon directors in Norway.  MTQ at 36.  But Water Street seeks discovery from U.S.-based nonparties who are not subject to the jurisdiction of Norwegian courts and possess unique, relevant evidence that cannot be obtained from foreign affiliates.  *See supra* Section V.A..  Professor Kinander has made clear that discovery is not "equally available in both" Norway and the United States.  *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997).  To the extent the Court considers Water Street's requests as duplicative and unduly burdensome, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Id.* at 80.

Far from being duplicative, the discovery sought in the instant and Washington proceedings are complementary and directed at different entities with

---

[17] Even when there is no time limitation, as the case Hanwha cites shows, courts simply narrow the scope of discovery.  *See Location 24, LLC v. Drs. Same Day Surgery Ctr., Inc.*, 2023 WL 6049818, at *2 (M.D. Fla. Jan. 27, 2023) (limiting production within a two-year period).  Just as in *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988)—which Hanwha relies upon—where the court affirmed § 1782 discovery that did not amount to a fishing expedition, this Court should grant Water Street's narrowly tailored discovery requests.

distinct roles in the underlying events.  MTQ at 36.  The subpoenas in the Washington Proceeding are directed at REC Silicon and focus on its internal operations and technical decision-making.  *See, e.g.*, Salant Decl., Ex. 1 at 9–12 (seeking documents related to the restart of fluid bed reactors and internal board communications regarding the Purchase Agreement).  In contrast, the Georgia subpoenas target Hanwha Qcells' internal decision-making, coordination, and rationale for conduct—information solely within Hanwha Qcells' possession.  *See, e.g.*, ECF Nos. 4-1, 4-2 at 14–15 (seeking documents concerning tariff exemptions and procurement from OCI).  Moreover, document production in the Washington Proceeding remains ongoing, and the full scope of responsive materials in REC Silicon's possession is still being determined.

*Fourth*, Hanwha argues that Water Street seeks privileged information because the subpoena seeks documents from "attorneys" who acted or are acting on Hanwha Qcells' behalf.  MTQ at 36–37.  But unlike the cases Hanwha relies on, Water Street does not seek to depose or obtain privileged documents from Hanwha's counsel.  *See In re Application to Conduct Discovery*, 2017 WL 3708028, at *5 (D.D.C. Aug. 18, 2017); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006).  To the extent any responsive documents are privileged, Hanwha may withhold them in the first instance and provide a privilege log.  If Hanwha believes the requests involve significant volumes of privileged material, Water Street is

willing to confer on appropriate limitations. *See Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1288–89 (S.D. Fla. 2012). Hanwha lobs multiple arguments in the hope that one will stick—none do.

Accordingly, all four *Intel* factors weigh in favor of granting Water Street's application. Hanwha fails to show that the Court did not appropriately exercise its discretion in granting the § 1782 application. This Court should deny Hanwha's motion to vacate the Order. *Sauren Fonds-Select SICAV*, 2016 WL 6304438, at *3.

## C.    Hanwha's Request to Quash the Subpoenas Should Be Denied.

Hanwha moves to quash the discovery subpoenas under Rule 45, claiming that Water Street has not demonstrated a substantial need for the requested discovery and that it imposes an undue burden. MTQ at 37–38. This Court already reviewed the proposed subpoenas and concluded that they are not unduly intrusive or burdensome. Order at 5. And Hanwha has made no showing of burden or hardship. Hanwha chose not to quantify any specific burden or meaningfully engage in a meet-and-confer process to avoid unnecessary motion practice. *See In re Petrus Advisers Investments Funds, L.P.*, 2023 WL 3673372, at *6 (S.D. Fla. May 26, 2023) (rejecting "boilerplate objections" and "all-or-nothing approach"). Instead, they obtained an extension and prepared an extensive motion to vacate and quash the entirety of Water Street's subpoenas. Any legitimate burden or overbreadth concerns should be resolved through good-faith negotiations following an order to

30

comply.[18]  Water Street is willing to work with Hanwha to minimize any burden, including by identifying sources of responsive documents and proposing reasonable custodians and search terms.

Water Street has carried its burden under Rule 45(d)(3) "to show a substantial need for the materials that cannot otherwise be met without undue hardship." *Feingold v. Cardinale*, 2023 WL 8476408, at *2 (S.D. Fla. Nov. 1, 2023).[19] Hanwha's motion to quash should be denied.

**D.    Water Street Agrees to the Entry of a Protective Order, But Any "Prosecution Bar" Would Be Inappropriate.**

Water Street agrees to the entry of a standard protective order protecting the confidentiality of the documents and ensuring that they are used only in connection with Water Street's contemplated foreign proceeding.  *See* MTQ at 38; Salant Decl. ¶ 10.  Hanwha goes further and asks this Court to impose a "prosecution bar" to preclude all potential U.S. claims against Hanwha entities and personnel.  MTQ at 38.  But it cites no authority for this extraordinary remedy—and for good reason.

---

[18] Even the case Hanwha references, *Aspen Corps., Inc. v. Gorman*, 2020 WL 10057926, at *3 (S.D. Fla. Oct. 8, 2020), supports this approach, as the court directed the parties to negotiate and narrow the scope of discovery.

[19] This case is a far cry from *Feingold*, where the court affirmed quashing subpoenas that were unclear about their necessity, included unrelated requests, failed to identify the information sought or underlying basis, and were issued to entities only *possibly* connected to the matter. *Id.* at *8.  Or *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1342 (11th Cir. 2020), where the court affirmed the quash of a subpoena against a nonparty that had "marginal to non-existent" relevance.

Courts disfavor blanket bans on future litigation absent clear evidence of abuse or bad faith, neither of which exists here. *See Sgromo v. JA-RU Inc.*, 2023 WL 2919865, at *6 (M.D. Fla. Feb. 6, 2023) (denying pre-filing injunction); *Klayman v. Porter*, 104 F.4th 298, 306 (D.C. Cir. 2024); *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, (9th Cir. 2014). Hanwha offers only baseless speculation that Water Street intends to misuse § 1782 discovery. *See supra* Section V.A. Hanwha's proposed bar would baselessly "restrict[] [Water Street's] constitutional right to access all courts and forums" and infringe on Water Street's right to pursue legal remedies in appropriate forums, a result that cannot be justified based on speculation. *Klayman*, 104 F. 4th at 306.[20]

### E.    The Court Should Deny Hanwha's Request for Reciprocal Discovery.

As a final bullying tactic to pressure and burden Water Street, Hanwha asks the Court to order Water Street to produce "reciprocal discovery." MTQ at 39. This Court should reject Hanwha's "attempt to shoehorn wide ranging discovery against parties to a foreign proceeding under the guise of 'reciprocal discovery' because it would circumvent t[he] statutory scheme under § 1782 established by Congress." *In re Republic of Ecuador*, 2011 WL 736868, at *10 (N.D. Cal. Feb. 22, 2011).

---

[20] Indeed, in the key case Hanwha cites, *In re Watkins*, 2024 WL 4264900, at *12 (S.D.N.Y. July 26, 2024), the court found a protective order limiting use of discovery to the foreign proceeding adequately safeguarded against concerns about the possible future litigation in the United States. No prosecution bar was entered in that case, and none is justified in this instance.

*First*, denial of reciprocal discovery is appropriate where, as here, the discovery sought fails to meet the requirements of 28 U.S.C. § 1782—the "normal basis for [a c]ourt's exercise of jurisdiction in aid of a foreign proceeding." *Ecuador*, 2011 WL 736868, at *10. Hanwha does not—and cannot—show that it satisfies either the statutory or discretionary elements of § 1782.[21] *Id.* (rejecting reciprocal discovery when lacking § 1782 factors); *In re Furstenberg Finance SAS*, 2018 WL 735670 at *3 (S.D. Fla. Jan. 10, 2018); *In re Imanagement Servs, Ltd.*, 2005 WL 1959702, at *6 (E.D.N.Y. Aug. 16, 2005).

*Second*, courts deny reciprocal discovery where, as here, such discovery pertains to topics "not at issue in the § 1782 proceedings" and "would do nothing but delay" it.[22] *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 819 (11th Cir. 2019). This case mirrors *Deposit Ins. Agency v. Leontiev*, 2018 WL 3536083, at *11 (S.D.N.Y. July 23, 2018), where the court denied reciprocal discovery because the

---

[21] The cases Hanwha cites either granted reciprocal discovery where the applicant was "not found in any district in the United States," *Consorcio Minero, S.A. v. Renco Grp., Inc.*, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012); *In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*, 2025 WL 40783, at *6 (S.D.N.Y. Jan. 7, 2025); or because the applicant consented to reciprocal discovery, *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008). Water Street can be found in a district in the United States and does not consent to reciprocal discovery.

[22] Hanwha has no legal or factual basis to seek discovery from Mr. Leming or regarding Water Street's confidential witnesses. MTQ at 40. Water Street played no role in the Purchase Agreement, or the misleading tender offers at issue. And forcing disclosure of confidential witnesses would risk retaliation by REC Silicon and Hanwha.

33

respondent was a nonparty to the foreign litigation and offered no legitimate purpose beyond shielding himself from vague, hypothetical future claims. This Court should reject Hanwha's improper attempt to derail legitimate fact-gathering for a Norwegian proceeding and gain pretextual ammunition for a speculative U.S. action.

*Third*, Hanwha claims "reciprocal discovery" is warranted to prevent Water Street from gaining unilateral pre-litigation discovery for a potential U.S. action. MTQ at 40. But § 1782 is aimed at assisting foreign proceedings—not providing a backdoor to circumvent U.S. discovery rules. Hanwha provides no details regarding the supposed U.S. litigation either: no facts, no claims, and no indication of what that case would even look like. And Hanwha admits it would be entitled to discovery from Water Street "in the event a lawsuit was actually filed." *Id.* That alone defeats its demand for premature and unsupported reciprocal discovery.[23]

Until the contemplated proceedings ensue, there is no justification for using this action as a tool to intimidate witnesses or gain premature access to evidence.

---

[23] Hanwha also argues that, without reciprocal discovery, there would be a lack of procedural parity between the parties in Norway. MTQ at 40. But Water Street is a party to the contemplated Norwegian proceeding, and the Georgia-based Hanwha entities are not. When that action is filed, its defendants will have a proper forum in which to pursue discovery. There is no evidence that Water Street "could obtain discovery against [Anchor and the REC Silicon board members] in the United States, while [those parties] would be unable to gain access to analogous [Water Street] documents or testimony in" Norway. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995).

**F.     The Court Should Compel Hanwha's Document Production and Depositions.**

In light of Hanwha's plain delay tactics, which risk running out the clock while Anchor attempts to push through another lowball tender offer, Water Street respectfully submits that a Court order is needed to keep subpoena compliance on track. *See In re Pons*, 2020 WL 5355967, at *11 (S.D. Fla. Sept. 7, 2020) ("The Eleventh Circuit has permitted applicants to successfully move to compel discovery when respondents refuse to cooperate.").

Accordingly, Water Street respectfully submits the accompanying proposed order that: (1) within 48 hours, Hanwha produce to Water Street (a) Hanwha's agreement to purchase polysilicon from OCI; (b) documents sufficient to show all Hanwha employees who were physically present at REC Silicon's Moses Lake facility during the at-issue period; and (c) documents sufficient to show all Hanwha employees who communicated with REC Silicon's Moses Lake facility during the at-issue period; and (2) the parties meet and confer within 48 hours of this Court's ruling on the motions to address the balance of Water Street's discovery requests and a timeline for production and deposition.

## VI.   CONCLUSION

The Court should deny Hanwha's motion to vacate and quash in full and grant Water Street's cross-motion to compel.

Dated:  August 15, 2025                Respectfully submitted,

*/s/ Reed Brodsky*

GIBSON, DUNN & CRUTCHER LLP
Reed Brodsky (admitted *pro hac vice*)
David Salant (admitted *pro hac vice*)
Vanessa Ajagu (admitted *pro hac vice*)
Maxwell Peck (admitted *pro hac vice*)
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
Email:  rbrodsky@gibsondunn.com
Email:  dsalant@gibsondunn.com
Email: vajagu@gibsondunn.com
Email: mpeck@gibsondunn.com

*/s/ Steven M. Kushner*

FELLOWS LaBRIOLA LLP
Steven M. Kushner
233 Peachtree Street NE
Suite 2400
Atlanta, GA 30303
Telephone: 404.586.9200
Email: skushner@fellab.com

*Attorneys for Applicant Water Street
Capital, Inc.*

36

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D**

Pursuant to Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned hereby that the foregoing filing is prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1C of the United District Court for the Northern District of Georgia.

37

Dated:  August 15, 2025                          Respectfully submitted,


_/s/ Reed Brodsky_

GIBSON, DUNN & CRUTCHER LLP
Reed Brodsky (admitted _pro hac vice_)
David Salant (admitted _pro hac vice_)
Vanessa Ajagu (admitted _pro hac vice_)
Maxwell Peck (admitted _pro hac vice_)
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
Email:  rbrodsky@gibsondunn.com
Email:  dsalant@gibsondunn.com
Email: vajagu@gibsondunn.com
Email: mpeck@gibsondunn.com


_/s/ Steven M. Kushner_

FELLOWS LaBRIOLA LLP
Steven M. Kushner
233 Peachtree Street NE
Suite 2400
Atlanta, GA 30303
Telephone: 404.586.9200
Email: skushner@fellab.com


_Attorneys for Applicant Water Street Capital, Inc._

38

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed a true and correct copy of the foregoing though the Court's CM/ECF system, which will automatically serve all counsel of record by electronic mail.

Respectfully submitted, this 15th day of August, 2025.

/s/    *Steven M. Kushner*
Steven M. Kushner