**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE APPLICATION FOR DISCOVERY
PURSUANT TO 28 U.S.C. § 1782, *filed by*

WATER STREET CAPITAL, INC.,

        Applicant.

CIVIL ACTION NO.
1:25-cv-04695-TWT-RDC

**REPLY MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS'
MOTION TO VACATE THE COURT'S *EX PARTE* ORDER AND TO
QUASH THE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS
AND TESTIMONY FOR USE IN A FOREIGN PROCEEDING**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ......................................................................................................2

I.     THE APPLICATION FAILS TO SATISFY THE STATUTORY "FOR USE" REQUIREMENT OF § 1782 ......................................................2

II.    THE DISCRETIONARY *INTEL* FACTORS WEIGH HEAVILY AGAINST PERMITTING THE REQUESTED DISCOVERY ....................6

    A.    *Intel* Factor 1 Weighs Against Discovery As The Requested Evidence Is Within The Jurisdiction Of The Norwegian Judiciary ............................................................................................6

    B.    *Intel* Factor 2 Also Weighs Against § 1782 Discovery Because of the Character and Nature of the "Contemplated" Proceedings ........7

    C.    *Intel* Factor 3 Weighs Against Discovery As WSC Attempts To Circumvent Norwegian Law And The Norwegian Judiciary ..............8

    D.    *Intel* Factor 4 (& Fed. R. Civ. P. 45) Also Weigh Against WSC As Its Requested Discovery Is Unduly Intrusive And Burdensome ....................................................................................10

III.   IF THE COURT DENIES RESPONDENTS' MOTION, IT SHOULD GRANT RESPONDENTS' ALTERNATIVE REQUESTS.........................14

IV.   WSC'S CROSS MOTION TO COMPEL SHOULD BE DENIED .............15

CONCLUSION .................................................................................................15

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Buckler v. Israel*,
  2014 WL 7777678 (S.D. Fla. Nov. 13, 2014) ......................................11

*Budeanu v. Allstate Ins. Co.*,
  2024 WL 4543187 (N.D. Ga. July 12, 2024), *reconsideration
  denied*, 2024 WL 4535278 (Aug. 13, 2024)........................................11

*Consorcio Minero, S.A. v. Renco Grp., Inc.*,
  2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012)......................................15

*Concorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS
  Forwarding (USA) Inc.*, 747 F.3d 1262 (11th Cir. 2014)....................3

*Fortinet, Inc. v. Forescout Techs., Inc.*,
  2024 WL 139259 (N.D. Cal. Jan. 11, 2024)........................................11

*Frasers Grp. PLC v. Stanley*,
  95 F.4th 54 (2d Cir. 2024) ...................................................................6

*Furstenberg Finance SAS v. Litai Assets LLC*,
  877 F.3d 1031 (11th Cir. 2017) ........................................................3, 4

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ...............................................................4

*In re Hornbeam Corp.*,
  722 Fed. App'x 7 (2d Cir. 2018) ..........................................................4

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
  33 F.4th 669 (2d Cir. 2022) .................................................................6

*In re Kivisto*,
  521 Fed. App'x 886 (11th Cir. 2013) ...................................................2

*In re Klein*,
  2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023) .......................................6

i

*In re Kurbatova*,
   2019 WL 2180704 (S.D. Fla. May 20, 2019) ........................................................6

*In re Letter Rogatory from Nedenes Dist. Ct., Norway*,
   216 F.R.D. 277 (S.D.N.Y. 2003) .........................................................................9

*Lewis v. Lowes Home Centers LLC*,
   2023 WL 10947360 (M.D. Ga. Oct. 24, 2023) ............................................10, 11

*Maronda Homes, Inc. of Fla. v. Progressive Exp. Ins. Co.*,
   2015 WL 1565299 (M.D. Fla. Apr. 8, 2015)................................................11, 12

*Minitec Fin. S.A.R.L. v. SI Grp. Inc.*,
   2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008).....................................................14

*In re Municipality of Mariana*,
   2024 WL 4602818 (S.D. Fla. Oct. 29, 2024) ......................................................12

*In re Petition of Pinewood Techs. Asia Pac. Ltd.*,
   2025 WL 40814 (S.D. Fla. Jan. 7, 2025)..............................................................12

*In re Pinewood Techs. Asia Pac. Ltd.*,
   2024 WL 5294277 (S.D. Fla. Nov. 19, 2024) ......................................................12

*In re Rendon*,
   2020 WL 8771274 (S.D. Fla. Nov. 5, 2020) .............................................3, 4, 10

*Skytruck Co., LLC v. Sikorsky Aircraft Corp.*,
   2011 WL 13141023 (M.D. Fla. May 11, 2011) ...................................................11

*Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*,
   310 F.R.D. 523 (S.D. Fla. 2015)..........................................................................12

*In re Sveeas*,
   249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................................9

*In re  Inv., LLC*,
   2022 WL 18662732 (S.D. Fla. Nov. 7, 2022) .......................................................2

## Rules/Statutes

28 U.S.C. § 1782 .......................................................................................... *passim*

Federal Rule of Civil Procedure 30(b)(6) ...................................................................13

Federal Rule of Civil Procedure 45 ...........................................................10, 13, 14

Federal Rule of Civil Procedure 37 .........................................................................15

Norwegian Dispute Act of 2005 ................................................................................9

Norwegian Securities Trading Act ("STA")..............................................................5

## **Other Authorities**

Local Rule 7.1 .........................................................................................................15

Local Rule 37.1 .......................................................................................................15

Respondents respectfully submit this Reply Memorandum of Law in support of their Motion to Vacate the Court's July 2, 2025 *Ex Parte* Order and to Quash the Subpoenas and memorandum of law in support thereof ("Motion") (ECF 24-1).[1]

## PRELIMINARY STATEMENT

WSC's Opposition reveals the true intent of this improper discovery exercise. WSC does not dispute that it may bring claims against Respondents or Hanwha in both Norway and the United States and concedes it can obtain relevant discovery in Norway. And yet WSC's first move was to file two 28 U.S.C. § 1782 applications on an expedited basis seeking largely overlapping evidence, first in Washington and then in this District, rather than pursue its remedies in Norway. WSC appears to recognize the impropriety of this approach, noting that "[***u***]***ntil the contemplated proceedings ensue, there is no justification for using this action as a tool to . . . gain premature access to evidence.***" Opp. at 41 (emphasis added). Having manufactured the allure of urgency, WSC misled this Court and the court in Washington to expedite the consideration of its applications and grant § 1782 discovery from REC Silicon and Respondents based on the July 8, 2025 voluntary tender offer deadline. Yet it has been 45 days since July 8 and WSC still has not commenced any "contemplated" Norwegian proceeding. That WSC still has not

---

[1]   Unless otherwise defined herein, capitalized terms shall have the same definition as those in Respondents' opening brief. ECF No. 24-1. Additionally, unless otherwise specified, page numbers refer to the ECF page numbers.

filed its "contemplated" proceeding despite claiming continuing harm further underscores how it is speculative and mere pretext for WSC to obtain pre-litigation discovery for ulterior purposes, including a U.S.-based action. To that end, WSC has sought to unnecessarily burden Respondents by seeking discovery it can obtain elsewhere. And WSC itself has further unnecessarily burdened this Court with excessive motion practice by filing a Motion to Compel in violation of the Federal and Local Rules, the parties' agreed upon stipulation, and this Court's July 15, 2025 Order temporarily staying the case and putting compliance with the subpoenas in abeyance (ECF No. 16). The Court should reject WSC's weaponization of § 1782 and grant Respondents' Motion.

## **ARGUMENT**

I.     **THE APPLICATION FAILS TO SATISFY THE STATUTORY "FOR USE" REQUIREMENT OF § 1782**

WSC's assertions fail to address the glaring deficiencies in the Application or otherwise establish that it has a legally recognizable claim under Norwegian law. The record makes clear WSC's requests are a fishing expedition that are not "for use" in any foreign proceeding but for pre-litigation discovery for U.S. claims. *In re Kivisto*, 521 Fed. App'x 886, 889 (11th Cir. 2013) (a court should deny a § 1782 request "when it suspects that it is a fishing expedition or a vehicle for harassment"); *In re Terra Inv., LLC,* 2022 WL 18662732, at *4 (S.D. Fla. Nov. 7, 2022) (holding "for use" statutory requirement was not satisfied because applicant was "engaging

2

in nothing more than an impermissible fishing expedition that [was] based on pure speculation"); *In re Rendon*, 2020 WL 8771274, at \*12 (S.D. Fla. Nov. 5, 2020). WSC does not dispute that it may bring claims or otherwise use § 1782 discovery against Hanwha or Respondents in the United States. Opp. at 22, 39-40. WSC's contemplated Norwegian proceedings are clearly pretextual considering WSC's clear intent to bring U.S. claims, which are not foreign proceedings.[2]

WSC also argues its contemplated Norwegian proceedings are not contingent on the discovery it seeks here (Opp. at 18-19) despite also stating that it is somehow "entitled to discover additional corroborating evidence." *Id.* at 19. But WSC has not provided reliable indications of when it intends to commence the Norwegian proceedings that it is "*in the process* of contemplating." Opp. at 18-19 (emphasis added). In *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA) Inc.*, the applicant provided reliable indications of a reasonably contemplated foreign proceeding based on an "extensive internal audit" and was required under foreign law to submit its evidence with its pleading at the time it commenced its foreign civil action unlike in Norway. 747 F.3d 1262, 1270-71 (11th Cir. 2014); Snellingen Decl. (ECF 24-34) ¶¶ 32-33. In *Furstenberg Finance SAS v. Litai Assets*

---

[2] WSC faults Respondents for "provid[ing] no details regarding" what claims WSC may bring in U.S. court. Opp. at 41. But it is not Respondents' job to hypothesize potential claims for WSC to bring against them and/or Hanwha and WSC's own statements indicate it believes it has claims under U.S. law. *See* Ex. AA to Bento Decl. (ECF No. 24-30); *see also* Opp. at 23.

3

*LLC*, the applicants specifically "maintain[ed] that they will file proceedings in Luxembourg within forty-five days of receiving the discovery sought." 877 F.3d 1031, 1035 (11th Cir. 2017). And in *In re Hornbeam Corp.*, the applicant established its foreign proceeding was within reasonable contemplation because the applicant had previously filed two related foreign actions against the same defendant. 722 Fed. App'x 7, 9 (2d Cir. 2018). In contrast, WSC has not filed any related foreign claims that would suggest further litigation is contemplated and has provided no indication of when its foreign suit may be filed. As Respondents' cited case, *In re Rendon* (Mot. at 21) makes clear, courts may consider an applicant's failure to identify when it intends to bring suit in determining whether the applicant has shown a foreign proceeding is within reasonable contemplation. 2020 WL 8771274, at *11 (finding that the "for use" requirement was not met where applicants did not draft a foreign pleading or provide a timeframe for filing). Such uncertainty would not serve § 1782's twin aims, as allowing discovery when proceedings are never commenced would facilitate abuse of the statute. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (remarking district courts "must be alert for potential abuses" of § 1782 including "if the foreign suit [is] frivolous" and if the applicant "seek[s] discovery in a federal district court that it could obtain in the foreign jurisdiction"). Tellingly, nowhere in WSC's list of "preparation[s]" does WSC state

it is preparing a complaint, let alone when it may file suit in Norway. Opp. at 20; *see also* App. at 25.

WSC also downplays its failure to commence any foreign proceeding prior to the July 8 deadline by now asserting "Norwegian law provides remedies including rescission for fraud and monetary damages from the voluntary tender offer" and that a mandatory tender offer deadline is next week. Opp. at 20-21. But since WSC did not accept the tender offer or sell its shares in REC Silicon to Anchor, there is no discernable concrete harm to remedy with damages nor would rescission of the tender offer impact WSC's shares. 2d Snellingen Decl. ¶¶ 51-55. Such hypothetical claims cannot form the basis for § 1782 relief.

Finally, WSC argues it, "as a REC Silicon shareholder, may assert a cause of action in Norwegian courts under Chapter 6 of the Norwegian Securities Trading Act [("STA")] for a tender offer that contained material errors or omissions" and may seek injunctive relief, statutory remedies, disgorgement, and rescission. Opp. at 21. But because the Norwegian Financial Supervisory Authority ("NFSA") governs the STA process for submitting a mandatory tender offer, an injunction would circumvent the NFSA and STA's rules and policy considerations. Norwegian courts would therefore ordinarily defer to the NFSA's regulatory role in this area, intervening only after the NFSA has rendered a decision, which further underscores that Petitioner's proceeding is not within "reasonable" contemplation. 2d Snellingen

Decl. ¶ 63; *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 678 (2d Cir. 2022) ("The mere opportunity to present material to a party to a potential future lawsuit does not satisfy the requirement of § 1782 that the material be 'for use' in a foreign proceeding."). WSC has not satisfied § 1782's "for use" requirement given the signs WSC is using its Norway proceedings as a fishing expedition and WSC's lack of legally recognizable claims in Norway.

## II.    THE DISCRETIONARY *INTEL* FACTORS WEIGH HEAVILY AGAINST PERMITTING THE REQUESTED DISCOVERY

Even if the Court finds that WSC's Application satisfies § 1782's "for use" requirement, the Court should exercise its discretion to grant Respondents' Motion because the *Intel* factors weigh against WSC's requested discovery.

### A.    *Intel* Factor 1 Weighs Against Discovery As The Requested Evidence Is Within The Jurisdiction Of The Norwegian Judiciary

WSC's argument based on Respondents' status as a non-participant in its contemplated Norwegian proceeding is incorrect. *See* Opp. at 25.[3] Rather, the relevant inquiry is whether the discovery sought is "within the foreign tribunal's jurisdictional reach and the evidence sought is not necessarily unobtainable absent § 1782(a) aid." *In re Kurbatova*, 2019 WL 2180704, at *3 (S.D. Fla. May 20, 2019);

---

[3]   While WSC also disclaims this is not a case that "where 'for all intents and purposes,' the applicant seeks discovery from its adversary in a pending foreign proceeding" (Opp. at 25 (quoting and citing *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 59 (2d Cir. 2024) and *In re Klein*, 2023 WL 8827847, at *10 (S.D.N.Y. Dec. 21, 2023) (cases in the Second Circuit)), this ignores Q Cells' affiliation with Anchor.

*see also Intel*, 542 U.S. at 264 ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid"). Applying the correct standard, this *Intel* factor weighs against WSC as WSC requests discovery from Respondents that is not unobtainable absent § 1782 aid. WSC presumes "it is unlikely that a Norwegian entity created for the purpose of conducting a Norwegian tender offer would possess the information" it seeks here; however, WSC offers no support for its speculation. Opp. at 26. In any event, WSC also intends to sue REC Silicon's former board members. App. at 25. Moreover, as Mr. Snellingen (a former Norwegian District Court judge) notes, much of the evidence sought by WSC through § 1782 overlaps with the evidence WSC can seek and obtain in Norway. Snellingen Decl. § V; 2d Snellingen Decl. § III. WSC also sidesteps Respondents' argument that WSC can obtain information in Norway through either pre-action discovery and/or discovery during the litigation (Mot. at 27-28) by claiming the Norwegian court-mandated *investigation* would be inadequate. Opp. at 26-27. But the Norwegian court-mandated investigation is separate and distinct from the pre-action and during-action discovery mechanisms available to WSC in Norway. Snellingen Decl. ¶¶ 78, 83. Accordingly, the first *Intel* factor weighs against WSC.

**B.    *Intel* Factor 2 Also Weighs Against § 1782 Discovery Because of the Character and Nature of the "Contemplated" Proceedings**

WSC argues the second *Intel* factor weighs in its favor because Norwegian

7

courts are generally receptive to assistance from U.S. courts. Opp. at 27-28. But WSC's single-minded focus on receptivity ignores the "character and nature" of its contemplated Norwegian proceedings, which courts also consider under the second *Intel* factor. *See Intel*, 542 U.S. at 264 (noting courts "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad…"). WSC's inaction in Norway underscores that its contemplated Norwegian proceedings are mere pretext for WSC to bring a U.S. action against Hanwha and Respondents, or worse, to pressure and harass Respondents and their parent, who has been REC Silicon's biggest supporter and creditor (with loans and guarantees totaling approximately $450 million since 2023). *See* 2d Hong Decl. ¶ 10. Indeed, WSC does not have legally recognizable claims under Norwegian law since it suffered no harm. Snellingen Decl. ¶¶ 66-69; 2d Snellingen Decl. ¶¶ 51-57. In WSC's own words "there is no justification for using this action as a tool to . . . gain premature access to evidence." Opp. at 34. Accordingly, the second *Intel* factor weighs against WSC.

     **C.**    ***Intel* Factor 3 Weighs Against Discovery As WSC Attempts To Circumvent Norwegian Law And The Norwegian Judiciary**

The third *Intel* factor considers whether the application reflects an attempt to circumvent proof-gathering restrictions or policies of a foreign country or the United States. Mot at 30. Rather than address Respondents' argument that WSC aims to circumvent the Norwegian Dispute Act of 2005, WSC generically argues that

8

"Norwegian courts actively seek and accept deposition testimony." Opp. at 29. But WSC's cited case, *In re Letter Rogatory from Nedenes Dist. Ct., Norway*, 216 F.R.D. 277, 279 (S.D.N.Y. 2003), is distinguishable as the Norwegian court itself "specifically requested the assistance of" the U.S. court to compel the respondent to provide a blood sample in connection with a paternity proceeding in the Norwegian Court.[4] Here, no Norwegian court has sought the assistance of this Court in obtaining discovery (nevertheless a blood sample), and could not influence the deposition questions asked. 2d Snellingen Decl. ¶ 41-43. WSC argues that it can use deposition testimony obtained pursuant to § 1782 in its contemplated Norwegian proceedings because the examination of foreign witnesses is "impossible" and is therefore an exception to the general rule barring use of deposition testimony in Norwegian litigation. Opp. at 26-27 (citing 2d Kinander Decl. ¶¶ 8-9). But the "impossibility" exception cannot be relied upon simply because the witness is located abroad since the Norwegian court here would be able to obtain evidence abroad via the Hague Convention. 2d Snellingen Decl. ¶¶ 19-25. Moreover, the use of the Respondents' deposition testimony in the Norwegian proceeding would be contrary to Norwegian legislative objectives because "[t]he contemplated defendants in the Norwegian litigation would not be able to question the deposed witnesses and their right to

---

[4]   Neither the respondents in the Washington Proceeding nor the respondents in *In re Sveeas*, 249 F.R.D. 96 (S.D.N.Y. 2008) argued U.S. deposition testimony was not permitted under Norwegian law, so the courts there did not address the issue.

contradiction would not be fulfilled if the depositions were to be admitted as evidence in WSC's contemplated Norwegian litigation." *Id.* ¶ 30.

Finally, WSC conflates attempting to circumvent Norwegian law and the Norwegian judiciary with a foreign exhaustion requirement. Opp. at 30. Although there is no categorical exhaustion requirement under § 1782, the Court may consider WSC's conduct in the foreign forum, including its failure to seek discovery in Norway. *See, e.g.*, *In re Rendon*, 2020 WL 8771274, at *15 ("Although it is not required to first consult with the foreign tribunal, immediately seeking U.S. assistance in a § 1782 application raises the specter of abusive litigation tactics."). WSC's inaction in Norway evidences its intention to use § 1782 to circumvent Norwegian law and the Norwegian judiciary, while abusing the U.S. court system and the § 1782 discovery process. Thus, the third *Intel* factor weighs against WSC.

### D.    *Intel* Factor 4 (& Fed. R. Civ. P. 45) Also Weigh Against WSC As Its Requested Discovery Is Unduly Intrusive And Burdensome

The depositions of the Individual Respondents are unduly intrusive and burdensome. WSC fails to meet its burden to demonstrate that the apex doctrine does not bar the subpoenas seeking testimony from Q Cells USA's CEO and Q Cells Georgia's CEO and CFO. Courts in this circuit have observed that CEOs and CFOs are sufficiently high-ranking corporate officers for the apex doctrine to apply. *See Lewis v. Lowes Home Centers LLC*, 2023 WL 10947360, at *2 (M.D. Ga. Oct. 24, 2023) ("Defendant asserts, and Plaintiff does not dispute, that [the] President,

10

Chairman, and CEO of Lowe's, is sufficiently high ranking to trigger the apex doctrine."); *Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, 2011 WL 13141023, at *1 (M.D. Fla. May 11, 2011) (finding the apex doctrine applied to both the CEO and CFO who were not shown to have unique personal knowledge). WSC's cited cases are readily distinguishable. Opp. at 31-32. Unlike *Budeanu v. Allstate Ins. Co.*, where the Court found the defendants offered nothing to establish two individuals were entitled to apex protection because the court had "no information about where [the individuals] fit into the hierarchy of the organization or how many employees are supervised by them," 2024 WL 4543187, at *2 (N.D. Ga. July 12, 2024), *reconsideration denied*, 2024 WL 4535278 (Aug. 13, 2024), and *Fortinet, Inc. v. Forescout Techs., Inc.*, 2024 WL 139259, at *4 (N.D. Cal. Jan. 11, 2024), where the court found that the "the parties [] submitted no evidence that would allow the Court to determine whether [the subpoenaed individual] is an apex witness," Respondents here have demonstrated the Individual Respondents are "sufficiently high ranking to merit protection from giving a deposition," *Buckler v. Israel*, 2014 WL 7777678, at *1 (S.D. Fla. Nov. 13, 2014). Mr. Bongsoo Kim is the CEO of Q Cells USA, which employs approximately 1,750 employees, and Mr. Eun Sik Kim is the CEO and Mr. Hyunkwang Cho is the CFO of Q Cells Georgia, which has approximately 1,200 employees. Hong Decl. (ECF 24-2) ¶¶ 5, 7; 2d Hong Decl. ¶¶ 5-9. The Individual Respondents are plainly of higher rank than the controller and VP in *Maronda*

11

*Homes, Inc. of Fla. v. Progressive Exp. Ins. Co.*, where the court did not know where he fit in the hierarchy. 2015 WL 1565299, at *3 (M.D. Fla. Apr. 8, 2015).

Crucially, "[a] party seeking to depose a high-ranking corporate officer or director must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015); *In re Municipality of Mariana*, 2024 WL 4602818, at *2 (S.D. Fla. Oct. 29, 2024) (dealing with a mass tort litigation); *In re Pinewood Techs. Asia Pac. Ltd.*, 2024 WL 5294277, at *6 (S.D. Fla. Nov. 19, 2024), report and recommendation adopted in part, rejected in part sub nom. *In Re Petition of Pinewood Techs. Asia Pac. Ltd.*, 2025 WL 40814 (S.D. Fla. Jan. 7, 2025) ("While [the CEO] might know some of this information firsthand, it should not be supposed that the same information could not be discovered in a less intrusive way—…from sources not as high up as the CEO."). WSC does not make this showing and instead attempts to improperly shift its burden to Respondents by arguing (incorrectly) that Respondents "do not dispute the Individual Respondents have 'unique or superior knowledge.'" Opp at 33. As WSC has not carried its burden, the apex doctrine applies and the Individual Respondent Subpoenas should be quashed.

WSC has also not satisfied Rule 45(d)(3), which requires it to show a substantial need for its requested discovery. WSC has already sought and obtained overlapping discovery in the Washington Proceeding, Opp. at 35-36, and it could obtain even more overlapping discovery in Norway either prior to or after commencing its contemplated Norwegian proceedings. *See* Mot. at 32-33, 36.

Moreover, with respect to WSC seeking 30(b)(1) depositions of the Individual Respondents and a 30(b)(6) deposition of Q Cells, WSC tellingly makes no argument based on the facts and circumstances present here that depositions of the Individual Respondents are *necessary*, let alone substantially needed, in view of its requested Rule 30(b)(6) depositions. *See* Opp. at 34.[5]

Lastly, in arguing its Subpoenas should not be quashed under Rule 45, WSC contends Respondents "chose not to . . . meaningfully engage in a meet-and-confer process to avoid unnecessary motion practice." Opp. at 37. WSC's contention is blatantly false: Respondents met and conferred with WSC prior to filing their Motion. 2d Bento Decl. ¶ 5. During this meet and confer, Respondents' made clear that WSC should assume that Respondents would be moving to quash the subpoenas and that the parties should discuss, among other things, a briefing schedule and conditions for acceptance of service for all Respondents. *Id*. ¶ 6. WSC's position

---

[5]  WSC also appears to no longer seek 30(b)(6) depositions of both Q Cells entities. Opp. at 34 n.16.

that Respondents refused to meaningfully engage in the meet-and-confer process is belied by the parties' stipulation. ECF No. 16. Ironically, if any party has failed to meaningfully engage in a meet-and-confer process to avoid unnecessary motion practice, it is WSC as it filed its cross-motion to compel without any attempt to comply with the Federal and Local Rules' requirements that it engage Respondents in a pre-motion meet and confer. Accordingly, the fourth *Intel* factor weighs heavily against WSC and the Subpoenas should be quashed under Rule 45.

## III.  IF THE COURT DENIES RESPONDENTS' MOTION, IT SHOULD GRANT RESPONDENTS' ALTERNATIVE REQUESTS

Should the Court deny Respondents' Motion, the Court should enter a protective order and allow reciprocal discovery. WSC does not dispute that any § 1782 discovery permitted by the Court should be subject to a protective order that, *inter alia*, limits WSC's ability to use the discovery to the Norwegian proceedings. Opp. at 38. But WSC argues Respondents' request that a protective order include a prosecution bar is improper. To be clear, Respondents are only requesting an order that prohibits WSC from using evidence it obtains here to bring claims against Respondents. The particular circumstances here warrant such an order.

WSC incorrectly suggests this Court's discretion to grant reciprocal discovery requires Respondents to satisfy § 1782's requirements. Opp. at 40. Rather, it is within a district court's discretion to order reciprocal discovery to correct informational asymmetry. *See, e.g., Minitec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL

14

3884374, at *9 (N.D.N.Y. Aug. 18, 2008) (granting reciprocal discovery without considering whether respondent satisfies § 1782's requirements); *Consorcio Minero, S.A. v. Renco Grp., Inc.*, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012) (same). The circumstances here are particularly well-suited to a discretionary grant of reciprocal discovery to maintain parity between the parties (Mot. at 39-40) and mitigate the risk WSC obtains § 1782 evidence and uses it, directly or indirectly, to craft its claims against Respondents in the United States and elsewhere.

## IV.   WSC'S CROSS MOTION TO COMPEL SHOULD BE DENIED

As will be explained in Respondents' opposition on August 29, 2025 (*see* Local Rule 7.1), Water Street's cross-motion to compel should denied.[6]

### CONCLUSION

Respondents respectfully request that the Court vacate its Order, deny WSC's Application, and/or quash the Subpoenas, or in the alternative, grant (i) a protective order that limits any discovery obtained from Respondents to be used only in the contemplated Norwegian proceedings and that includes a prosecution bar barring WSC from using § 1782 evidence against Respondents, and (ii) reciprocal discovery.

---

[6]   There are several reasons it should be denied, including as it (1) is contrary to the Court's July 15, 2025 order temporarily staying this proceeding and holding the subpoenas in abeyance pending the Court's ruling on the Motion; (2) seeks the production of documents within 48 hours despite failing to identify any urgent need; and (3) does not comply with the meet and confer requirements under Federal Rule of Civil Procedure 37 and Local Rule 37.1.

15

Dated: August 22, 2025

/s/ Debra D. Bernstein

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Debra D. Bernstein
Georgia Bar No. 054998
debrabernstein@quinnemanuel.com
Jesse Hevia
Georgia Bar No. 899208
jessehevia@quinnemanuel.com
1200 Abernathy Road, Suite 1500,
Building 600
Atlanta, Georgia 30328-5670
(404) 482-3502

Lucas Bento
(*pro hac vice*)
lucasbento@quinnemanuel.com
295 5th Avenue, 9th Floor New York,
New York 10016
(212) 849-7000

Kristin T. Casey
(*pro hac vice*)
kristincasey@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000

Gavin Frisch
(*pro hac vice*)
gavinfrisch@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

*Attorneys for Respondents*

16

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

Pursuant to Local Rule 7.1(D), the undersigned certifies that the foregoing filing has been prepared in Times New Roman 14-point font in accordance with Local Rule 5.1.

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2025, the foregoing Reply Memorandum of Law in Support of Respondents' Motion to Vacate the Court's *Ex Parte* Order and to Quash the Subpoenas for the Production of Documents and Testimony for Use in a Foreign Proceeding was electronically filed using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

Dated: August 22, 2025

/s/ Debra D. Bernstein

18