**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| *In re* Application for Discovery Pursuant to 28 U.S.C. § 1782 | Case No. 1:25-cv-04695-TWT-RDC |

**JOINT DISCOVERY STATEMENT**

Applicant Water Street Capital, Inc. ("Water Street") and Respondents Hanwha Q Cells USA, Inc., Hanwha Q Cells Georgia, Inc., Bongsoo Kim, Eun Sik Kim, and Hyunkwang Cho's (collectively, "Hanwha"), by and through their undersigned counsel, respectfully submit this Joint Discovery Statement.

## I.   PROCEDURAL HISTORY

On December 8, 2025, the Court granted in part Water Street's application for discovery pursuant to 28 U.S.C. § 1782 and ordered that "the parties must submit: (i) a proposed protective order for the Court's approval, and (ii) a joint statement that establishes a schedule for document production and depositions, and that identifies any unresolved discovery issues." ECF No. 32 at 23. The parties thereafter jointly moved for an extension of time to comply with the Court's Order through January 9, 2026. ECF No. 33. On December 19, 2025, the Court granted the parties' joint motion for extension. ECF No. 34.

1

## II.    PROTECTIVE ORDER

Pursuant to the Court's Order, the parties submit a stipulated proposed protective order for the Court's approval to govern the disclosure and handling of confidential, proprietary, or private information produced in this action.

The parties have agreed on the text of the proposed protective order except for one disputed clause in Section 5 of the draft, pertaining to who may be shown documents marked "Confidential."  Attached hereto as **Exhibit A** is Water Street's proposed protective order, including the clause.  Attached hereto as **Exhibit B** is Hanwha's proposed protective order, excluding this clause.  The parties set forth below their respective positions on this clause and request the Court resolve the dispute and enter the draft it has chosen.

## A.    WATER STREET'S POSITION

Water Street respectfully submits that documents produced by Hanwha and designated "Confidential" pursuant to the protective order should be able to be shown to witnesses whom Water Street believes in good faith have previously seen the document, even if they are not expressly listed as the document's author or recipient.  Water Street has encountered important documents—such as formal notices provided under the at-issue polysilicon supply agreement and technical test results—that lack clear authors or recipients and were likely reviewed by multiple individuals in the ordinary course of business.  To the extent a witness has previously

2

seen the document, there should be no issue with the disclosure of that document to the individual another time, and any deposition testimony in which such a document is shown may also be designated "Confidential" to shield the information from further disclosure. Without this language, the protective order would unduly restrict the examination of witnesses and impede meaningful discovery.

## B.    HANWHA'S POSITION

The parties' agree that a confidential document subject to the protective order can be disclosed to a person who is the author or recipient of the document that has been designated confidential. *See* Ex. B, Respondents Proposed Protective Order at § 5. The sole dispute is whether a confidential document can also be disclosed to "a person whom Recipient believes in good faith has previously seen the document." Ex. A, Water Street's Proposed Protective Order at § 5. Respondents disagree with Water Street's proposal to add this language, and maintain that the disclosure of confidential documents should be limited to a person "who was an author or recipient of the document[.]" *Id.* If a person authors or receives a document, there is evidence that they are aware of the document's existence such that the confidential information is not being disclosed to someone unfamiliar with the document. The same cannot be said with respect to persons who the Recipient "believes in good faith" has seen the document. Applying Water Street's logic, it would be permissible for Water Street to share, for example, a confidential Q Cells Georgia email with

someone who the Recipient has a good faith belief has previously seen the email. Water Street's proposal does not provide Respondents' confidential information with adequate protection. The focus on authorship or receipt of the document should remain the touchstone for disclosure of confidential documents.

## III.    DISCOVERY SCHEDULE

Pursuant to the Court's Order, the parties submit the following schedule governing document production and depositions. The parties continue to dispute one deadline and address this issue below.

| Event | Applicant's Proposed Deadline | Respondents' Proposed Deadline |
|---|---|---|
| Parties finalize ESI data sources to be searched and search terms to be run | January 23, 2026 | |
| Hanwha makes first substantial document production | February 8, 2026 | |
| Hanwha completes its document production | February 27, 2026 | March 30, 2026[1] |
| Parties complete depositions | April 30, 2026 | |

## IV.    DISCOVERY DISPUTES

The parties have conferred and reached an impasse on four discovery issues: (1) discovery of Q Cells USA, (2) the appropriate number of entities and deponents

---

[1] Respondents reserve the right to seek additional time as they are still in the process of collecting and processing all data and due to foreign language materials. Water Street reserves its right to object and to obtain timely updates on the status of Hanwha's document collection, processing, and review.

for discovery, (3) the required steps, if any, to ensure nonduplication with the discovery obtained in the Section 1782 proceeding in the Eastern District of Washington (the "Washington Proceeding"), and (4) the appropriate date for the completion of document discovery. The parties set out their respective positions on these issues below.

## A.    WATER STREET'S POSITION

### 1.    Discovery of Q Cells USA and the Appropriate Entities and Deponents for Discovery

To streamline discovery and reduce burden, Water Street is willing to forego discovery from one of the two subpoenaed entities—Q Cells USA—and its personnel, provided that it receives fulsome discovery from the other subpoenaed entity—Q Cells Georgia—and its personnel. This proposal reflects Water Street's effort to balance efficiency and access to essential evidence.

In granting Water Street's application for discovery, the Court authorized Water Street to seek documents from both of Q Cells USA and Q Cells Georgia, to conduct a Rule 30(b)(6) deposition of both entities, and to take individual depositions of three individuals, Q Cells Georgia CEO Eun Sik Kim, Q Cells Georgia CFO Hyunkwang Cho, and Q Cells USA CEO Bongsoo Kim. ECF No. 13 at 5. In resolving Hanwha's subsequent motion to quash, the Court did not quash any of these subpoenas, but observed that "some trimming [of Water Street's

discovery requests] may be appropriate" in light of, for example, Q Cells USA not being a party to the at-issue supply agreement. ECF No. 32 at 20–21.

The parties met and conferred with this guidance in mind. Hanwha represented that Q Cells USA and its personnel were not involved in the negotiation, management, or termination of the Polysilicon Purchase Agreement with REC Silicon, and that Q Cells Georgia and its personnel were the relevant actors. Accepting this representation, Water Street offered to forego discovery from Q Cells USA and its personnel, so long as it received fulsome discovery from Q Cells Georgia. Water Street proposed to maintain its documents demands against Q Cells Georgia only, and would reduce to three depositions: a Rule 30(b)(6) deposition of Q Cells Georgia and individual Rule 30(b)(1) depositions of Georgia CEO Mr. Kim and CFO Mr. Cho. Water Street submits that this proposal fairly implements the Court's directive to responsibly trim discovery. *See* Fed. R. Civ. P. 26(b)(1).

Hanwha's proposal to limit deposition discovery to a single deposition of a single witness—that Mr. Kim sit for one deposition, speaking in a dual capacity as 30(b)(6) representative and 30(b)(1) witness—is inconsistent with settled law and with Water Street's discovery needs and the practical realities of this case. Individual and Rule 30(b)(6) depositions "are considered separate matters." *Hagler v. Williams*, 2021 WL 6123996, at *2 (N.D. Ga. Aug. 27, 2021). A Rule 30(b)(6) deposition "is substantially different from a witness's deposition as an individual,"

6

*AllianceOne, Inc. v. Monti*, 2005 WL 8153191, at *1 (M.D. Fla. Mar. 25, 2005), and does not substitute for individual fact testimony, even where the same executive is proposed to serve in both roles, *see Provide Com. v. Preferred Com.*, 2008 WL 360588, at *2 (S.D. Fla. Feb. 8, 2008). Courts therefore routinely order witnesses to be deposed twice—as corporate representatives and as individual fact witnesses when the depositions "serve distinct purposes, impose different obligations and involve different ramifications." *Aileron Inv. Mgmt. v. Am. Lending Ctr.*, 2021 WL 5961144, at *1 (M.D. Fla. Dec. 16, 2021) (quotation and alterations omitted).

Discovery of multiple people, including multiple eyewitnesses, is needed to truly explore Hanwha's decision making and claimed reasons for suddenly terminating its supply agreement with REC Silicon. Water Street brought forward significant evidence that Hanwha had conducted a scheme to sabotage REC Silicon in order to buy it for a significant discount. Water Street did significant work collecting and presenting the accounts of multiple confidential witnesses to support its theory. Limiting discovery to a single Rule 30(b)(6) deposition would deprive Water Street of the ability to examine the personal, contemporaneous knowledge of senior executives who played different roles in the relevant decisions. Mr. Kim and Mr. Cho served in distinct executive capacities—operational leadership and financial leadership—during the negotiation and termination of the Polysilicon Purchase Agreement. As the Court observed, "there is reason to believe that, given

7

their positions, [Mr. Kim and Mr. Cho] have unique or superior knowledge concerning their company's termination of a multi-billion dollar contract with REC Silicon." ECF No. 32 at 20.

Hanwha's assertion that Mr. Cho lacks independent knowledge is unsupported. The issues in this case implicate pricing, financial risk, and the financial consequences of entering and terminating the agreement and procuring polysilicon from another source—matters that would ordinarily fall within the Chief Financial Officer's responsibilities. If, as Hanwha suggests, Mr. Cho has no knowledge relating to any of those financial matters at the company where he is the CFO, that would be very surprising, and a very important item to explore alone, and would substantially reduce the amount of time needed to depose the CFO.

In sum, Water Street respectfully requests that the Court adopt its compromise proposal: limiting document discovery to Q Cells Georgia, and permitting three depositions: a Rule 30(b)(6) deposition of Q Cells Georgia and Rule 30(b)(1) depositions of Messrs. Kim and Cho.

## 2.    Nonduplication With the Washington 1782 Discovery

During the meet-and-confer process, Water Street explained in detail why the discovery obtained from REC Silicon in the Washington Proceeding is not duplicative of the discovery sought here from Hanwha. REC Silicon was in dire financial straits and made substantiated claims of understaffing and burden. Water

Street thus narrowed its focus to REC Silicon's internal technical materials, including specifications, test results, and limited correspondence, and REC Silicon produced a large "document dump" of internal documents that did not include email correspondence between it and Hanwha or any internal Hanwha communications. Here, in contrast, discovery is focused on Hanwha's internal conduct, deliberations, and decision-making surrounding the negotiation, execution, and termination of the Polysilicon Purchase Agreement. Thus, while the Court instructed the parties to "avoid redundancy, if any," with already-obtained discovery, ECF No. 32 at 21, Water Street explained that, notwithstanding superficial overlap in the text of certain requests for production, the scope and substance of the Washington discovery were different and did not duplicate the discovery sought here.

Hanwha nonetheless has insisted that discovery must be paired back to excise production of documents that Water Street allegedly "could have been obtained" from REC Silicon in Washington. However, Hanwha has not identified any basis to dispute Water Street's explanation of non-duplication, nor has it proposed any practical or principled method for limiting discovery in this action by excising documents that "could have been obtained" for REC Silicon. In an effort to reduce discovery burden on Hanwha, Water Street proposed, and Hanwha agreed, to run a single set of search terms against to identify all potentially responsive documents, and Hanwha has not identified any specific categories of documents it contends are

9

duplicative or plans to withhold as duplicative.  Hanwha should proceed with the agreed-upon search terms and produce all responsive documents.

During the meet-and-confer process, Hanwha demonstrated familiarity with nonpublic details of REC Silicon's document production in the Washington proceeding, including its volume and timing.  If Hanwha has indeed obtained the cooperation of REC Silicon—a company its affiliate now owns—it is positioned to obtain that information directly and should not rely on speculation regarding duplication as a basis to limit its discovery obligations.

For these reasons, Hanwha's request to withhold or excise responsive documents on the ground that they purportedly "could have been obtained" in the Washington proceeding should be rejected.

### 3.    The Appropriate Deadline for Completion of Document Production

Water Street submits that a production completion date of February 27, 2026, gives Hanwha more than enough time to conduct its collection, review and production in the context of this case.  Hanwha rejected this date and each of Water Street's compromise proposals and insists that it requires approximately eight months from the filing of this § 1782 application, or until March 30, 2026, to complete its production, as well as to reserve its rights to seek further extensions.

Hanwha had represented that it was already collecting relevant sources of documents as of mid-December 2025.  It already received one extension, until today,

10

to continue document collections and prepare search-term hit reports. The search term hit reports shared thus far indicate a total of approximately 10,000 documents within the scope of review, including attached "family" documents. Two months is more than enough to complete this relatively small review and production project.

While certain responsive materials may be Korean-language documents, foreign language review is a routine and foreseeable aspect of cross-border discovery and can proceed within a two-month timeframe. Hanwha has not identified any unusual translation burden that would necessitate delaying completion of production. That is especially so today given the AI-related programs that translate communications expeditiously and effectively.

Moreover, because the parties have agreed that depositions will occur in April 2026 based on the availability of Hanwha's witnesses, a March 30 production deadline would not afford Water Street adequate time to review and analyze the production before those depositions, particularly if Hanwha's production is weighted towards its final deadline.

For these reasons, Water Street respectfully submits that February 27, 2026 is a reasonable and proportional deadline in light of the size of the review set, the scope of discovery at issue, and the need for Water Street to obtain discovery in a timely manner for use in its contemplated proceeding in Norway.

## B.    HANWHA'S POSITION

### 1.    Discovery Of Q Cells USA

Water Street's continued insistence on obtaining discovery from Q Cells USA is a fishing expedition that goes far from the Court's request that "Water Street should try to narrow down the scope of [its] requests—whether, for example, by custodian . . . ." ECF No. 32 at 21.  This fishing expedition is reflected in Water Street's current position conditioning its foregoing discovery of Q Cells USA on it "obtaining full and adequate discovery from Q Cells Georgia[,]" including the three depositions it has sought.  Email from V. Ajagu (Jan. 8, 2026, 8:37 AM).

In its 1782 Application and supporting materials, subsequent briefing, and during meet and confers, Water Street has failed to articulate a factual basis to support its request for discovery from Q Cells USA.  With regard to a deposition of Bongsoo Kim, Water Street has not established that he "has unique, non-repetitive, firsthand knowledge of the facts at issue" to overcome the apex doctrine.  *See Sun Cap. Partners, Inc. v. Twin City Fire Ins.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (citation omitted).  As the Court recognized, "Q Cells USA was not a Party to the Supply Agreement, so it is much less clear whether it or Bongsoo Kim, its CEO, have any relevant information."  ECF No. 32 at 21.  Respondents have also represented that Q Cells USA was not involved in either the negotiation, management, or termination of the Agreement.  Email from G. Frisch (Jan. 7, 2026,

12

8:47 AM).   Water Street itself even notes that "the involved entity" is Q Cells Georgia.  Email from V. Ajagu (Jan. 8, 2026, 8:37 AM).

Following Respondents' representation about Q Cells USA's lack of involvement with respect to the REC Silicon agreement, Water Street has stated it is "prepared to forego document searches and depositions of Q Cells USA and its personnel."  *Id.*  However, Water Street has conditioned foregoing discovery from Q Cells USA on the condition that it gets three depositions of Q Cells Georgia.  *Id.* Whether Water Street takes one, two, or three depositions of Q Cells Georgia is immaterial to Water Street's failure to articulate a basis to condition its foregoing of discovery from Q Cells USA on depositions of Q Cells Georgia.  Notably, Water Street also stated that it was seeking "a single 30(b)(6) deposition of Hanwha Qcells' corporate representative, and served both Qcells Georgia and Qcells USA with the same deposition notice and topics in an abundance of caution."  ECF No. 27 at 27 n.16.  Thus, discovery from Q Cells USA, which Respondents have represented was not involved in either the negotiation, management or termination of the Agreement, (Email from G. Frisch (Jan. 7, 2026, 8:47 AM)), is not relevant or warranted and Water Street has not met its burden to prove otherwise. *Nat'l Staffing Sols., Inc. v. Sanchez*, 2022 WL 19355853, at *2 (M.D. Fla. Sept. 12, 2022) ("The party seeking to enforce a subpoena has the burden of demonstrating the information sought is relevant.") (citation omitted).

## 2.    The Appropriate Number of Entities and Deponents for Discovery

Respondents have offered Water Street a combined 30(b)(1) and 30(b)(6) deposition of Q Cells Georgia's CEO, Eun Sik Kim, as Water Street has failed to articulate a need for Mr. Cho's deposition.  Nor has Water Street articulated any basis for refusing Respondents' offer other than the fact it wants three depositions.  But Respondents' proposal is reasonable given Respondents' status as third parties to the Contemplated Norwegian Proceeding and the C-level roles held by Mr. Kim and Mr. Cho.  By offering a single deposition of Mr. Kim in his individual capacity and as Q Cells Georgia's corporate representative, Water Street can ask him about his personal knowledge and, to the extent he lacks personal knowledge, can answer on behalf of Q Cells Georgia.  Water Street cannot complain that Respondents are refusing to prepare a witness on any of its 30(b)(6) topics.  *See* G. Frisch Email (Jan. 8, 2026, 12:49 PM).

Considering Respondents' proposal for Mr. Kim, an apex witness, to be deposed as a 30(b)(1) and 30(b)(6) witness, Water Street has not articulated any need during the meet and confers with Respondents to also depose Mr. Cho, another apex witness, beyond his role as CFO.[2]  Moreover, Water Street has articulated no basis

---

[2]   Rather than unnecessarily demand the scheduling of Mr. Cho's deposition now, the better course of action is for Water Street to depose Mr. Kim and, if there is legitimate reason to do so, approach Respondents to request Mr. Cho's deposition and, if a dispute arises, seek relief from the Court. *See, e.g., Simon v. Pronational Ins.*, 2007 WL 4893478, at *1 (S.D. Fla. Dec. 13, 2007) (finding that plaintiff must

to oppose Q Cells Georgia's proposal to designate Mr. Kim as its corporate representative. It is axiomatic that "a corporate CEO may also be a designated Rule 30(b)(6) corporate representative." *In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 10410066, at *1 n.1 (N.D. Ala. Apr. 25, 2017). Accordingly, it is not uncommon for parties to designate their C-level employees as their corporate representatives if the C-level employee has personal knowledge and is prepared to testify on behalf of the entity's knowledge. *See, e.g.*, *Grethaka Sols. OU v. Click Labs, Inc.*, 2024 WL 326622, at *1 n.1 (M.D. Fla. Jan. 29, 2024) (CEO testifying as Rule 30(b)(6) deponent). Likewise, parties routinely designate individuals who have been noticed for depositions in their personal capacity as corporate representative witnesses, with courts allowing for "the deposition is completed in one day and is limited to a total of seven (7) hours." *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 2018 WL 3397717, at *1 (M.D. Fla. Mar. 19, 2018) (ordering individual "be deposed in her individual capacity" and as a 30(b)(6) deponent).

Finally, Water Street's conditioning of its agreement to "forego document searches and depositions of Q Cells USA and its personnel" on Respondents agreeing to "the three remaining depositions is improper. *See, supra* Issue 1.

---

first seek discovery through less intrusive means such as interrogatories or other depositions and may depose high-ranking executive only if those efforts fail).

15

### 3. Nonduplication With the Washington 1782 Discovery

Per the Court, "Water Street should…avoid redundancy, if any, with the discovery already obtained in the Washington Proceeding." ECF No. 32 at 21. Applicant has declined to identify the specific documents they have already received in the Washington Proceedings. Applicant has merely represented that "the focus of discovery in this action (Hanwha's conduct and decision making) is different from the discovery taken in the Washington action (facts on the ground at REC Silicon)." Email from V. Ajagu (Dec. 12, 2025, 1:42 PM). Applicant also noted that REC Silicon did not produce any email correspondence between it and Hanwha and that at a high-level, the production included "(a) internal technical materials from REC Silicon and (b) letter correspondence sent referencing the parties' supply agreement." Email from V. Ajagu (Dec. 16, 2025, 12:12 PM).

Yet the requested discovery remains overlapping with several of the document requests. *See* ECF No. 24-1 at 36 (comparing Subpoena ECF No. 4-1 at Doc. Req. Nos. 1-3, 7, with the Subpoena in *In re* Application *for Discovery Pursuant to 28 U.S.C. § 1782*, No. 25-mc-0019 (E.D. Was.), ECF No. 4-1, at Doc. Req. Nos. 1-2, 5, 9). For instance, Document Request 1 from both Subpoenas is essentially the same, seeking "All Documents and Communications Concerning the Polysilicon Purchase Agreement". Document Request 2 requests "All Documents and Communications concerning polysilicon manufactured by the Moses Lake Facility,

16

including but not limited to (a) internal Communications concerning quality, sampling, and tests, and (b) Communications with REC Silicon." Subpoena, ECF No. 4-1 at 14. And Subpoena Document Request No. 7 and Washington Subpoena Document Request No. 9 both seek "Communications with any current or former member of the Board of Directors of REC Silicon…." Such communications with REC Silicon could have been requested and obtained in the Washington Proceeding.

The Deposition Topics are similarly overlapping, including Topic 1 (relating to Hanwha's communications with REC Silicon), Topic 2 (relating to the negotiation and execution of the Polysilicon Purchase Agreement), and Topic 3 (relating to the decision to terminate the Agreement and including "all significant or material communications from Hanwha Qcells to REC Silicon…"). ECF No. 4-1 at 5-6. That Applicant chose not to have a deposition of REC Silicon's CEO and claim that "REC Silicon did not produce any email correspondence between it and Hanwha", does not negate the fact that these requests are duplicative and within the scope of the grant of Water Street's application in the Washington Proceeding. *See* Email from V. Ajagu (Dec. 16, 2025, 12:12 PM). Water Street has not set forth any proposal with regard to avoiding redundancy with respect to the Washington Proceeding despite having access to the production in that proceeding, which totals north of 14,000 documents.

**4.      The Appropriate Deadline for Completion of Document Production**

Respondents propose a document production deadline of March 30, 2026, while still reserving the right to adapt this schedule as necessary. As communicated to the Applicant, Respondents, as part of their good faith discovery efforts, are continuing to collect and process additional data, which Respondents expect to increase the total number of documents to review and produce. Additionally, a large portion of the documents collected and that hit on the search terms, which also include Korean terms, are in Korean, thereby requiring foreign language review and translation as communicated to Water Street. *See* Email from G. Frisch (Jan. 8, 2026, 12:49 PM). Respondents will be producing documents on a rolling basis before March 30, 2026.

Water Street's claimed urgency is also misplaced as the Contemplated Norwegian Proceeding is still contemplated and has not been filed. Nor has Water Street articulated any discovery deadline or statute of limitations issue or concern in their Contemplated Proceedings. Moreover, Respondents understand that in the Washington Proceeding, REC Silicon had over four months to review and produce documents in response to comparable subpoenas. During our meet and conferrals, Water Street was also amenable to extending to March 25, 2025, before reverting to February 27, 2026, after Respondents maintained their position for a March 30, 2026, production deadline given the fact that additional data is being processed,

18

which will likely increase the universe of documents to be reviewed, and that Korean-language documents also need to be reviewed. *See* Emails from V. Ajagu (Jan. 9, 2026, 2:27 PM & 2:49 PM); Email from K. Casey (Jan. 9, 2026, 2:37 PM).

Dated:  January 9, 2026

Respectfully submitted,


/s/ Lucas Bento

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Debra D. Bernstein
Georgia Bar No. 054998
Elizabeth O'Roark
Georgia Bar No. 316107
elizabethoroark@quinnemanuel.com
debrabernstein@quinnemanuel.com
1200 Abernathy Road
Suite 1500, Building 600
Atlanta, Georgia 30328-5670
T: (404) 482-3502

Lucas Bento
(admitted *pro hac vice*)
lucasbento@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
T: (212) 849-7000

Kristin T. Casey
(admitted *pro hac vice*)
kristincasey@quinnemanuel.com
555 13th Street NW
Suite 600
Washington, D.C. 20004
T: (202) 538-8000

Gavin Frisch
(admitted *pro hac vice*)
gavinfrisch@quinnemanuel.com
111 Huntington Ave., Suite 520
Boston, MA 02199
T: (617) 712-7100

*Attorneys for Respondents*

/s/ Reed Brodsky

GIBSON, DUNN & CRUTCHER LLP
Reed Brodsky (admitted *pro hac vice*)
David Salant (admitted *pro hac vice*)
Vanessa Ajagu (admitted *pro hac vice*)
Maxwell Peck (admitted *pro hac vice*)
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
Email:  rbrodsky@gibsondunn.com
Email:  dsalant@gibsondunn.com
Email: vajagu@gibsondunn.com
Email: mpeck@gibsondunn.com


/s/ Steven M. Kushner

FELLOWS LaBRIOLA LLP
Steven M. Kushner
233 Peachtree Street NE
Suite 2400
Atlanta, GA 30303
Telephone: 404.586.9200
Email: skushner@fellab.com


*Attorneys for Applicant Water Street
Capital, Inc.*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D**

Pursuant to Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned hereby that the foregoing filing is prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1C of the United District Court for the Northern District of Georgia.

Dated:  January 9, 2026

Respectfully submitted,

*/s/ Reed Brodsky*

GIBSON, DUNN & CRUTCHER LLP
Reed Brodsky (admitted *pro hac vice*)
David Salant (admitted *pro hac vice*)
Vanessa Ajagu (admitted *pro hac vice*)
Maxwell Peck (admitted *pro hac vice*)
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
Email:  rbrodsky@gibsondunn.com
Email:  dsalant@gibsondunn.com
Email: vajagu@gibsondunn.com
Email: mpeck@gibsondunn.com

*/s/ Steven M. Kushner*

FELLOWS LaBRIOLA LLP
Steven M. Kushner
233 Peachtree Street NE
Suite 2400
Atlanta, GA 30303
Telephone: 404.586.9200
Email: skushner@fellab.com

*Attorneys for Applicant Water Street Capital, Inc.*

22