IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782, *filed by* <br><br> WATER STREET CAPITAL, INC., <br><br> Applicant. | CIVIL ACTION NO. 1:25-cv-04695-TWT-RDC |

## **ORDER**

This 28 U.S.C. § 1782 proceeding is again before the Court for consideration of a proposed protective order and resolution of outstanding discovery disputes. (Doc. 35).

## **INTRODUCTION**

Because the parties are familiar with the facts, the undersigned will present only a brief summary of the relevant background. Additional details are included in prior orders. *See* (Docs. 13, 32).

In June 2025, Applicant Water Street Capital, Inc. ("Water Street") filed an *ex parte* application under § 1782 to obtain discovery in connection with an anticipated foreign proceeding. (Doc. 1). After the undersigned granted the application, Respondents moved to vacate and quash. (Doc. 24). In December 2025, the undersigned entered an order finding, first, that judicial assistance was warranted under § 1782, but second, that the parties should further attempt to negotiate the scope of assistance. (Doc. 32). On January 9, 2026, the parties submitted competing protective-order proposals and a joint statement outlining a handful of outstanding discovery disputes.

This is not Water Street's only § 1782 proceeding. In June 2025, it filed a related application in the Eastern District of Washington. *In Re: Water Street Capital Inc.*, No. 2:25-mc-00019-JAG (the "Washington Proceeding"). There, Water Street sought document production from REC Silicon ASA and related entities operating in Washington, plus deposition testimony from three individuals, including REC Silicon ASA's CEO. *Id.*, ECF Nos. 1, 4. U.S. Magistrate Judge James A. Goeke granted Water Street's initial *ex parte* application and later granted in part the respondents' motion to quash. *Id.*, ECF Docs. 10, 24.

**I. Proposed Protective Order**

The parties have largely agreed on the terms of a proposed protective order, but they disagree on one particular provision (Section 5) regarding the disclosure of confidential documents.

Water Street wants permission to disclose confidential documents to any person whom it "believes in good faith has previously seen the document." It says that it has encountered documents "that lack clear authors or recipients and were likely reviewed by multiple individuals in the ordinary course of business." And it wants to be able to show such documents to anyone who, in its good-faith estimation, may have seen them. Respondents argue that such permission would unduly loosen the protections on confidential information.

The undersigned is not persuaded that Water Street's proposed permission is warranted. The parties have already designated several *persons* to whom disclosure of confidential information may be made: the parties themselves; respective attorneys and

consultants; stenographers and videographers; experts; presiding courts; and document authors and recipients. (Doc. 35-2 ¶ 5). To guard against broad use and dissemination, however, some of these persons are required to execute compliance acknowledgments as a precondition to disclosure. Notably, the parties have also designated several *proceedings* during which confidential information may be disclosed: depositions, trial, and hearings. (*Id.*).

It seems the dispute here might have been resolved by simply requiring the class of persons at issue—i.e., those who may have seen confidential documents but were neither authors nor recipients—to execute the compliance acknowledgment. That would presumably have mitigated the risk that Respondents are worried about. In any event, Water Street hasn't adequately described the class of non-author, non-recipient persons at issue (e.g., how big is the class, and who are its members?), nor explained why it is so important that these persons view confidential documents outside of permitted proceedings.

The undersigned thus adopts Respondents' version of the proposed protective order, (Doc. 35-2), a clean version of which is attached hereto as Exhibit 1.

**II. Respondents Hanwha Q Cells USA, Inc. ("Q Cells USA") and Bongsoo Kim**

In a prior order, the undersigned observed that Respondent Q Cells USA was not a party to the supply agreement that is the gravamen of both this proceeding and the contemplated foreign litigation, and it was therefore unclear "whether it or Bongsoo Kim, its CEO, have any relevant information." (Doc. 32 at 21). In response, Water Street no longer insists on discovery from Respondents Q Cells USA and Bongsoo Kim.

Commendably, Water Street has agreed to forgo discovery from these Respondents. (Doc. 35 at 5–6).

### III. Depositions

Water Street wants to take depositions from three Respondents: Hanwha Q Cells Georgia, Inc. ("Q Cells Georgia"), under Rule 30(b)(6); plus its CEO Eun Sik Kim and CFO Hyunkwang Cho, under Rule 30(b)(1). Meanwhile, Q Cells Georgia has designated Mr. Kim as its corporate representative under Rule 30(b)(6). There are two related disputes. First, whether Mr. Kim may be deposed in his corporate and individual capacities during the same deposition. And second, whether Mr. Cho may be deposed at all. The answers are yes and it depends.

The Federal Rules must be construed to secure "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. With that imperative as backdrop, and mindful of Mr. Kim's executive role as Q Cells Georgia's CEO, the undersigned finds that it would be appropriate for him to sit for a single deposition in both his corporate and individual capacities. *See, e.g., Aydin and Co., LLC v. Jewelers Mutual Ins. Co.*, No. 1:07-cv-2780, 2010 11519514, at *3 n.8 (N.D. Ga. Mar. 23, 2010) (observing that "the combining of [individual and corporate] depositions has been held to be perfectly proper"); *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) ("Presumably, if the witness is capable of testifying on behalf of the designated entity, the witness is also capable of testifying as an individual, at the same deposition."); *Pruco Life Ins. Co. v. California Energy Dev. Inc.*, No. 3:18-cv-02280, 2021 WL 5043289, at *6 (S.D. Cal. Oct. 29, 2021) ("When a party seeks to depose an individual both as a percipient

4

witness and as a representative of a corporation, courts almost invariably require that the two depositions be combined into one.").

Combining depositions would be the most practically expedient thing to do here. After all, Water Street has not sued and does not intend to sue Q Cells Georgia or Mr. Kim (at least it hasn't represented as much). Instead, as relevant for present purposes, Water Street wants to find out whether a parent company may have ordered or influenced Q Cells Georgia's decision to terminate the supply agreement mentioned above. In the undersigned's estimation, a single deposition of the company's CEO in a dual capacity ought to be sufficient to fairly investigate the issue in this ancillary proceeding.

That said, the undersigned also recognizes that Water Street would ordinarily be entitled to depose Mr. Kim for up to seven hours in each capacity. *See* Fed. R. Civ. P. 30(d)(1). Thus, while there will be some overlap in deposition topics and testimony between Mr. Kim's dual capacities, to ensure that Water Street has enough time to question him in each capacity, the undersigned will permit Water Street to depose Mr. Kim for up to 10 hours in one day.

As for Mr. Cho, the undersigned is not persuaded that his deposition is necessary at this point. He may or may not have unique and material personal knowledge about the circumstances surrounding the supply agreement's termination. Water Street can probe that issue during Mr. Kim's deposition. If Water Street later learns—for example, from Mr. Kim—that Mr. Cho might have unique and material personal knowledge about the supply agreement's termination, it may then seek his deposition. To be more precise, no later than one week after Mr. Kim's deposition, Water Street may move for an order

requiring Mr. Cho's deposition. But in that case, Water Street must present evidence reasonably suggesting that Mr. Cho has unique and material personal knowledge about the circumstances surrounding Q Cells Georgia's decision to terminate the supply agreement.

## IV. Duplicative Discovery

In a prior order, the undersigned advised that Water Street "should try to narrow down the scope of these requests—whether, for example, by custodian, document type, or additional search terms—and also avoid redundancy, if any, with discovery already obtained in the Washington Proceeding." (Doc. 32 at 21). In response, Water Street says that the discovery sought in this proceeding is different than the discovery sought in the Washington Proceeding. Respondents, meanwhile, insist that some of the discovery is redundant, and they request that discovery be limited to exclude any material that "could have been obtained" in the Washington Proceeding.

Neither party has given the Court useful parameters to narrow discovery and avoid redundancy. In any event, while acknowledging that some of the material Water Street is seeking in this matter may duplicate material obtained in the Washington Proceeding, the undersigned finds that such redundancy is incidental and non-prohibitive.

In the Washington Proceeding, Water Street sought document production from a different company doing business in a different state, situated on the opposite side of the supply agreement at issue. And it sought depositions from completely different individuals. To be sure, some of the requests in the twin proceedings are similar. But even identical requests do not necessarily entail identical responses. In the Washington Proceeding, Water Street sought discovery from one side of the supply agreement (the supplier). In this

6

proceeding, it is seeking discovery from the other (the buyer). Some of the requests in each instance may be similar, but the sources are different. The undersigned therefore declines to restrict the scope of discovery based on possible duplication.

### V. Document Production Deadline

The parties have stipulated deadlines for certain discovery matters but cannot agree on an appropriate date to complete document production. Having reviewed the parties' respective arguments, the undersigned orders that all production be completed by March 16, 2026. The undersigned recognizes, on the one hand, that Respondents must undertake significant document production and review, including Korean-language translation. But on the other, Water Street needs adequate time to review Respondents' disclosures in advance of Mr. Kim's deposition, which is currently scheduled for April 2026. In the undersigned's estimation, the chosen date will give each side an appropriate amount of time.

### CONCLUSION

As explained, the undersigned **ORDERS** the following:

1. Respondents' proposed protective order, attached hereto as <u>Exhibit 1</u>, is adopted.

2. No discovery shall be permitted from Respondents Q Cells USA and Bongsoo Kim.

3. Respondent Eun Sik Kim must sit for a single deposition in both his corporate and individual capacities by **April 30, 2026**. The deposition is limited to **one day of up to 10 hours**. Within one week after Mr. Kim's deposition, Water Street may move for an order requiring that Hyunkwang Cho also sit for a

deposition, in accordance with the discussion above.

4.  Water Street is not required to further limit discovery to avoid duplication with the Washington Proceeding.

5.  Document production must be completed by **March 16, 2026**; otherwise, the parties' stipulated discovery deadlines are adopted.

IT IS SO **ORDERED** on this 20th day of January 2026.

_____
REGINA D. CANNON
United States Magistrate Judge

8

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782, *filed by* <br><br> WATER STREET CAPITAL, INC., <br><br> Applicant. | CIVIL ACTION NO. 1:25-cv-04695-TWT-RDC |

**PROTECTIVE ORDER**

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted.  Accordingly, the Parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order.  The Parties to this Stipulated Protective Order are Applicant Water Street Capital, Inc. and Respondents Hanwha Q Cells USA, Inc., Hanwha Q Cells Georgia, Inc., Bongsoo Kim, Eun Sik Kim, and Hyunkwang Cho.

The Parties acknowledge that the Court has jurisdiction to construe and enforce this Protective Order.

**1. Scope**

The Parties submit this Stipulated Protective Order to the Court for approval and agree to be bound by the Protective Order's terms.

1

## 2. Definitions

i.      "Applicant" shall mean Water Street Capital, Inc.

ii.     "Respondents" means Hanwha Q Cells USA, Inc., Hanwha Q Cells Georgia, Inc., Bongsoo Kim, Eun Sik Kim, and Hyunkwang Cho.

iii.    "Hanwha Q Cells USA, Inc." means Hanwha Q Cells USA, Inc. and its present or former directors, managers, and employees.

iv.     "Hanwha Q Cells Georgia, Inc.," means Hanwha Q Cells Georgia, Inc. and its present or former directors, managers, and employees.

v.      "Party" means Applicant or Respondents in this case.

vi.     "Person" means a natural individual or a legal entity.

vii.    "Producer" means a Person who produces information via the discovery process in this action.

viii.   "Recipient" means a Person who receives information via the discovery process in this action.

ix.     "Confidential Information" includes information including information contained or recorded in documents, deposition testimony (including any transcript or recordings), or other material) concerning a Person, the disclosure of which is likely to cause harm that Person, including that Person's competitive position, negatively impact their privacy interests (including information that could be used to impair an

2

individual's personal safety, liberty, or well-being), or the disclosure of which would contravene an obligation of confidentiality to a third Person or to a court.   Confidential Information includes such information that a Producer claims in good faith to constitute or relate to protected health information (PHI), and sensitive business, financial, or commercial information that is not publicly available, that provides a commercial advantage to its possessor, that contains sensitive or personally identifiable information of a natural person, and/or that the disclosure of which to persons other than those described in Stipulation 5 below would create a risk of harm that could not be avoided by less restrictive means.   Confidential Information also includes confidential, proprietary, or private information of a third party to whom a Party owes an obligation of confidentiality with respect to such information. Information is not "Confidential Information" if it is disclosed in a publicly available printed publication, is known or is accessible to the public, was known to the Recipient without an obligation of confidentiality before the Producer disclosed it, or is or becomes known to the Recipient by a means not constituting a breach of this Order. Information is likewise not Confidential if a Person lawfully obtained it independently of this litigation.

x.      "The Contemplated Norwegian Proceedings" refers to any legal action contemplated by Applicant against Anchor AS and/or former REC Silicon directors in Norway in connection with Anchor AS's recent tender offers to purchase shares of REC Silicon, as described in Applicant's motion papers filed in this action.

## 3. Designation of Information as Confidential

i. The Producer may designate as confidential, for protection under this Order, any document, deposition testimony (including any transcript or recordings), information, or other material that constitutes or includes Confidential Information, by affixing a "CONFIDENTIAL" legend or stamp on such document or material. The legend or stamp shall be placed clearly on each page of the document or material for which such protection is sought.

ii. A Producer's designation of information as CONFIDENTIAL means that the Party believes in good faith, upon reasonable inquiry, that the information qualifies as such.

iii. By making documents or things containing Confidential Information available for inspection or by production without marking them as CONFIDENTIAL, a Producer does not forfeit a claim of confidentiality. A CONFIDENTIAL designation may be made at any time, including after production,

4

provided that any disclosure of information prior to its designation as CONFIDENTIAL shall not be considered a violation of this Order.

iv. A Party's failure to designate a document, thing, or testimony as CONFIDENTIAL does not constitute forfeiture of a claim of confidentiality as to any other document, thing, or testimony.

v. A Party who has designated information as CONFIDENTIAL may withdraw the designation by written notification to all Parties in the case.

vi. If a Recipient disputes a Producer's designation of information as CONFIDENTIAL, the Recipient shall notify the Producer in writing, identifying the specific document(s), testimony, or thing(s) as to which the designation is disputed, and the grounds for the dispute.  The Recipient and the Producer shall then confer to attempt to resolve the dispute without involvement of the Court.  If they cannot resolve the dispute, the Party challenging the designation may seek relief from the Court.  In the event such an application is made, the information shall remain subject to the Producer's designation until the Court rules on the dispute.

### 4. Use and Disclosure of Discovery Material

i. Any discovery material or information (including documents, deposition testimony, or other material) produced by the Respondents in this action may be used by the Applicant and Applicant's agents, only for purposes of investigating and prosecuting the Contemplated Norwegian Proceedings.  Any third party working on

behalf of Applicant in connection with this action, or in connection with the Contemplated Norwegian Proceedings, must execute the certification contained in Appendix A to this Order before such agent may be given access to discovery material or information produced by Respondents in this action.

ii. To the extent any filing in the Contemplated Norwegian Proceedings involving discovery material would, if not filed under seal, be available to the public, Applicant shall make reasonable efforts to submit such discovery material under seal in the first instance or seek to employ analogous procedures under Norwegian civil procedure to maintain the confidentiality of such document to the extent such procedures are available.

iii. (a) If Applicant is served with a Court-ordered subpoena or a Court order issued in litigation, including but not limited to the Contemplated Norwegian Proceedings, that would compel disclosure of any material or document produced in this action, Applicant must so notify Producer, in writing, promptly and in no event more than three (3) business days after receiving the subpoena or order unless such notification is prohibited by applicable law.  Unless prohibited by applicable law, such notification must include a copy of the subpoena or order.  Applicant must also immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order.  In addition, Applicant must deliver a copy of this

6

Order promptly to the party in the other action that caused the subpoena to issue. (b) To the extent procedures are available under applicable law for the Producer to challenge any such subpoena or order, Applicant will promptly inform Producer of such procedures to the extent known to the Applicant and shall not object to Producer's efforts to challenge such subpoena or order.

iv.  Any discovery material or information (including documents, deposition testimony, or other material) received by anyone who has signed Appendix A, or was required to have signed Appendix A, may use that material only for purposes of the Contemplated Norwegian Proceedings.

v.  Any Party who requests additional limits on disclosure (such as "attorneys' eyes only" in extraordinary circumstances) may, at any time during this matter or the Contemplated Norwegian Proceedings, serve upon counsel for the Recipient a written notice stating with particularity the grounds for the request.

**5. Disclosure of Confidential Information**

i. Absent written permission from the Producer or further order by the Court, information designated as CONFIDENTIAL may only be disclosed: (i) to a Party; (ii) to a Party's outside counsel, including necessary paralegal, secretarial, and clerical personnel assisting such counsel, and necessary discovery consultants, processors, and vendors assisting such counsel; (iii) to a Party's in-house counsel, including paralegal, secretarial, and clerical personnel assisting such individuals;

(iv) to a stenographer and videographer recording testimony concerning the information; (v) to experts and consultants and their staff whom a Party engages for purposes of the Contemplated Norwegian Proceedings, but only after each such person has completed the certification contained in Appendix A; (vi) at depositions, trial, or hearings in the Contemplated Norwegian Proceedings, but only if there is a good faith basis for disclosing the information; (vii) to the Court in this action as needed to prosecute this action; (viii) to the Court presiding over the Contemplated Norwegian Proceedings and its staff; (ix) to parties on the record in the Contemplated Norwegian Proceedings, but only in furtherance of Applicant's prosecution of the Contemplated Norwegian Proceedings and only after each such person has completed the certification contained in Appendix A.  Notwithstanding the foregoing, a document marked CONFIDENTIAL may be disclosed to any Person who was an author or recipient of the document.

### 6. Production of Privileged or Protected Material

Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege, doctrine, or immunity, to the extent not otherwise required to be produced.  To the extent a Party withholds any documents, information, or other material on the basis of a claim of

privilege, doctrine, or immunity, that Party shall identify the withheld material and provide the basis for the claim as required by the Federal Rules of Civil Procedure, including through the provision of a privilege log containing information sufficient to enable the receiving party to assess the applicability of the asserted privilege or protection. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or any other privilege, doctrine, or immunity are inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity in this or any other proceeding.  Any Party that inadvertently produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or any other privilege, doctrine, or immunity may obtain the return or destruction of such documents, information or other material by promptly notifying the Recipient(s).  The Recipient(s) shall gather and return to Producers or destroy all copies of such documents, information or other material in the Recipient's possession, custody or control within ten (10) business days of receipt of notice from the Party of production of the protected materials and confirm in writing that those documents have been destroyed any copies of such information; provided that, if the Recipient has challenged the claim of privilege or protection and such claim of privilege or protection is overruled, the Producer must re-produce such document(s) within 5 days of such ruling.  A document in the

9

Recipient's agent's possession, custody or control is also in the Recipient's possession, custody or control for purposes of this Order.

### 7. Unauthorized Disclosure

If a Recipient learns that, by inadvertence or otherwise, it has disclosed documents or information designated as CONFIDENTIAL to any Person or in any circumstance not authorized under this Order, the Recipient must immediately (a) notify in writing the Producer of the unauthorized disclosures, which written statement shall include a description of (i) the circumstances surrounding the unauthorized disclosure, (ii) a list of persons to whom such disclosure was made, and (iii) the steps the Recipient has taken to retrieve the CONFIDENTIAL information or to otherwise mitigate any harm that may result from its unauthorized disclosure; (b) use its best efforts to retrieve all copies of the CONFIDENTIAL information; (c) inform the Person(s) to whom unauthorized disclosures were made of all the terms of this Order; and (d) request that such Person(s) execute the attached Appendix A.

### 8. Document Destruction Upon Termination of Proceedings

Within sixty (60) days of final termination of the Contemplated Norwegian Proceedings, including any appeals, all discovery material produced in this action, including all copies thereof, in Recipient's possession, custody, or control shall be returned to the Producer, or, upon permission of the Producer or if such discovery

10

material is an electronic copy, destroyed. In any event, by the sixty (60) day deadline, the Recipient shall verify the return or destruction by submitting a written certification to the Producer affirming that it has not retained any copies, abstracts, compilations, summaries, or other forms of reproducing or capturing any of the discovery material. In the event that the Contemplated Norwegian Proceedings have not been initiated within two years of the date of this Order, by the end of the two-year period, all discovery material produced in this action, including all copies thereof, in Recipient's possession, custody, or control shall be returned to the Producer, or, upon permission of the Producer or if such discovery material is an electronic copy. By the two-year deadline, the Recipient shall verify the return or destruction by submitting a written certification to the Producer affirming that it has not retained any copies, abstracts, compilations, summaries, or other forms of reproducing or capturing any of the discovery material. Notwithstanding the foregoing, the Recipient need not return or destroy discovery material (a) disclosed to a person not Recipient's agent in conformance with this Order, unless such disclosure was in connection with a Contemplated Norwegian Proceeding and the court in the Contemplated Norwegian Proceeding has also ordered the return or destruction of such material, (b) with respect to which the Recipient has sought modification of this Order, and such requested modification has not been denied, or (c) to the extent such return or destruction would be inconsistent with applicable law

11

or other retention obligations, including the retention obligations of Applicant's Norwegian counsel under Norwegian generally accepted accounting standards.

### 9. Survival of Obligations

The obligations set forth in this Order survive the conclusion of this action and the termination of the Contemplated Norwegian Proceeding. This Order shall remain in full force and effect until canceled or otherwise modified by the Court.

\*     \*     \*

**APPENDIX A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782, *filed by*<br><br>WATER STREET CAPITAL, INC.,<br><br>  Applicant. | CIVIL ACTION NO.<br>1:25-cv-04695-TWT-RDC |

## ACKNOWLEDGEMENT OF UNDERSTANDING AND AGREEMENT TO BE BOUND

I certify that I have read the Protective Order ("Protective Order") in the above captioned case and that I understand the terms of the Protective Order. I recognize that I am bound by the terms of the Protective Order, and I agree to comply with those terms, including not using any information disclosed for any purpose beyond assisting Applicant's investigation and prosecution of the Contemplated Norwegian Proceedings. If I am found to have violated or otherwise not complied with the terms of the Protective Order, I understand I may be subject to penalties and/or other sanctions. I hereby consent to the personal jurisdiction of the United States District Court

for the Northern District of Georgia for any proceeding involving enforcement

of this agreement.


Name: _____

Date: _____

Signature: _____